No. 89-149

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF
ROBERT MARTIN MILLER,

          Petitioner and Respondent,

   and

ELIZABETH ANN MILLER,

          Respondent and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sherlock & Nardi; Patrick D. Sherlock, Kalispell,
        Montana

    For Respondent:

        Randall S. Ogle; Murray, Kaufman, Vidal, Gordon,
        and Ogle, Kalispell, Montana

Submitted on Briefs: July 20, 1989

Decided: August 25, 1989

Filed:

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The parties' marriage was dissolved by decree dated October 28, 1988 in the District Court for the Eleventh Judicial District, Flathead County. Wife appeals various aspects of the decree and the findings of fact and conclusions of law contained therein. We reverse and remand for further proceedings consistent with this opinion.

We rephrase the issues as follows:

1. Whether the District Court erred in its valuation and distribution of the marital property? We conclude that there was sufficient error to require remand and consideration.

2. Is it appropriate that a different Judge of the District Court consider this case on remand? We conclude that it is.

Elizabeth Ann Miller (wife) and Robert Martin Miller (husband) married on January 31, 1959. Four children were born during the marriage, all of whom were adults at the time of trial. The parties separated in November of 1986, with the wife remaining in possession of the family home in Kalispell. Since the date of separation, husband has paid the monthly mortgage payment of $415 on the first mortgage on the residence. In addition, he paid $200 per month temporary maintenance from November 1986 to February 1988. By court order dated February 22, 1988, the maintenance was increased to $400 per month.

Husband is employed as an electrician for the Bonneville Power Administration earning approximately $43,000 per year with a regular monthly net income of $2,218.46. At the time of trial, husband had acquired retirement benefits valued at $34,401. The District Court found that husband occasionally

2

worked overtime but that those hours were sporadic and that his overtime compensation was not regular income.

In addition to raising the parties' four children and serving as homemaker, the District Court found that the wife worked as a cake baker, cake decorator, and a professional monogrammer. At the time of trial, she was an enrolled student at Flathead Valley Community College pursuing a degree in education.

In 1982, the parties mutually acquired the business presently known as Miller Monogramming for $13,000. The business was operated as the joint business of husband and wife through November of 1986, after which time the wife was the sole operator. The business has been operated out of the family residence since its acquisition. In conjunction with the business purchase, the parties received a list of business clients and a three-year covenant not to compete from the seller. Since 1982, the parties have invested in Miller Monogramming the additional sum of $21,682 which was secured by a second mortgage on the family residence. The District Court found the outstanding second mortgage obligation to be $15,654.38.

The District Court valued Miller Monogramming at $22,800 based on the testimony of Thomas Wynne, C.P.A., who evaluated the tax returns and business schedules for 1983 through August 1988. The court awarded the business to the wife and ordered her to assume the second mortgage debt of $15,654.38.

The court also ordered the family home to be sold with the proceeds to be divided equally after payment of the first mortgage, which was $6,928.11 at the time of trial. The District Court did not value the family residence, but found that two appraisals were offered at trial, one of $118,442 and one of $90,000. The court ordered that the residence be appraised by a mutually agreeable appraiser and that the

3

parties accept any offer to purchase within ten percent of the appraised value. The court ordered the second mortgage to be paid by the wife no later than the time of sale of Miller Monogramming or at the time of sale of the residence, whichever occurred first. Husband was awarded his $34,401 of retirement benefits, and the parties' personal property was divided in accordance with a list prepared by the husband.

The District Court concluded that wife lacks sufficient property to provide for her reasonable needs and is unable to totally support herself through appropriate employment in the immediate future. The court ordered the husband to continue paying temporary maintenance of $400 per month directly to wife. In addition, the court required husband to pay the first mortgage payments of $415 until the residence was sold, at which time a hearing regarding further maintenance would be held. It is not clear from the court's order whether maintenance payments of $400 per month shall continue after sale of the house.

On appeal, wife challenges the court's valuation and distribution of the marital property. In particular, she challenges the valuation of the parties' business, Miller Monogramming, and the court's decision to award her the business in light of the court's duty to equitably apportion the marital property. She also argues that the District Court Judge should have recused himself because of editorial comments made during the divorce proceedings which she contends may have affected his impartiality.

I.

Whether the District Court erred in its valuation and distribution of the marital property?

The District Court awarded property valued at $49,443.50, or 52% of the marital estate to the husband, and property valued at $45,041, or 48% of the marital estate to

4

the wife. Wife contends that while this property division is approximately equal on its face, it is in no way an equitable apportionment of the marital property if the evidence presented is reconsidered by this Court.

The District Court has broad discretion in dividing the marital estate. In re Marriage of Luisi (Mont. 1988), 756 P.2d 456, 459, 45 St.Rep. 1023, 1025. In doing so, it is the duty of the District Court to equitably apportion the property under §40-4-202, MCA. In reviewing the lower court's division of property, this Court will look to see if the judgment is based upon substantial credible evidence, and if so, this Court will not disturb the judgment unless a clear abuse of discretion is shown. In re Marriage of Stewart (Mont. 1988), 757 P.2d 765, 767, 45 St.Rep. 850, 852. In this case, wife contends that the District Court's findings of fact and conclusions of law are not consistent with the evidence presented, thereby constituting an abuse of the lower court's discretion. Wife is particularly critical of the valuation of Miller Monogramming and of the earning capacity of that business as well as the distribution of the business to her.

The District Court found that, "Wife has the ability to earn in excess of $1,000 per month from Miller Monogramming." This finding is apparently based on other findings relating to gross income and gross profits which are as follows:

26. The gross income of Miller Monogramming in 1985 was approximately $16,240.00, or an average of $1,353.33 per month.

27. The cost of goods sold from Miller Monogramming in 1985 was $3,175.00.

28. The gross profit (i.e., gross income less cost of goods sold) of Miller Monogramming in 1985 was the sum of $13,064.71 or an average of $1,088.72 per month.

5

29.   The gross income of Miller Monogramming in 1986 was approximately $14,486.00, or an average of $1,207.00 per month.

30.   The cost of goods sold from Miller Monogramming in 1986 was $2,007.16.

31.   The gross profit (i.e., gross income less cost of goods sold) of Miller Monogramming in 1986 was the sum of $12,478.84, or an average of $1,039.90 per month.

32.   The gross income of Miller Monogramming in 1987 was approximately $11,578.00.

33.   The cost of goods sold from Miller Monogramming in 1987 was $1,689.00.

34.   The gross profit (i.e., gross income less cost of goods sold) of Miller Monogramming in 1987 was the sum of $9,889.00, or $824.08 per month.

Despite these extensive findings on gross income and gross profit, the court made no findings which reflect the net earnings of that business for the years in question. The same tax returns which the lower court used to determine gross income also reflect the net income of the business, however, no explanation is given for the absence of these figures in the court's decree. We have reviewed the tax returns received in evidence which set forth the following net earnings figures for the years 1983 to 1987:

| | |
|---|---|
| 1983 ...................... | $    487.87 |
| 1984 ...................... | (3,361.19) |
| 1985 ...................... | 421.35 |
| 1986 ...................... | 1,086.00 |
| 1987 ...................... | 622.00 |

The findings and conclusions do not address the contradiction between the net earnings as disclosed by the tax returns and

6

the specific findings on gross income as contained in the court's order. As a result, we conclude that there is no substantial credible evidence to support the findings of the District Court that the wife has the ability to earn in excess of $1,000 per month from Miller Monogramming.

At trial, wife requested that Miller Monogramming be sold and the proceeds, if any, be divided equally between the parties. She expressed her lack of interest in operating the business and her intent to pursue a degree in education. Instead, the District Court gave the business and the corresponding debt to the wife, which she now contends she neither wants nor can afford. The lower court did not state why it chose to award the business to the wife as opposed to honoring her request to have the business sold. The value of Miller Monogramming adopted by the lower court was the value offered by husband's expert, who examined the parties' tax returns for the years 1983 through August 1988. The expert admitted that his appraisal did not reflect the fair market value for selling purposes, nor did he consider the business' goodwill or equipment, or the impact of similar businesses in the area upon the marketability of Miller Monogramming. In contrast, the testimony of the real estate broker testifying for the wife showed that it would be very difficult to sell Miller Monogramming because of the local competition in the area. As a result, we are unable to find substantial evidence to support the valuation of the business itself.

In addition, the findings and conclusions of the District Court do not address the request on the part of the wife to have the business sold and to allow her to continue to pursue her college education. It appears that the award of retirement benefits having a value of $34,000 to the husband was basically offset against the award of the business to the wife. We conclude that the record does not

7

contain substantial evidence to support the evaluation of the Miller Monogramming business itself and its distribution to the wife. We therefore conclude that the valuation and distribution of the marital property should be set aside and returned to the District Court for redetermination.

Because the matter is being returned to the District Court for redetermination, we also direct the court to consider the question of maintenance of the wife.

## II.

Is it appropriate that a different Judge of the District Court consider this case on remand?

Wife contends that the District Court Judge should have disqualified himself prior to the October, 1988 hearing on the merits due to a series of publications which appeared in the Kalispell Daily Interlake in October of 1987. Wife did not formally move to disqualify the Judge as set forth in §3-1-805, MCA. However, she did express her concern as to the Judge's possible prejudice at the October, 1988 hearing in a Motion for Rehearing dated November 11, 1988.

Included in her Motion for Rehearing was an affidavit which established that on October 1, 1987, a news article appeared in the Kalispell Daily Interlake which was critical of the District Judge who tried this cause. The article contained a reference to the wife's pending divorce case in its news analysis of the Judge which stated in part:

> A couple files for divorce. A hearing on temporary support is held in May. No ruling is forthcoming. The husband, who makes $43,000 a year, voluntarily gives the wife $200 a month. The wife takes in sewing to make ends meet.
> A local attorney offers this example to back up his complaint that the 11th District Court - and in particular, the department presided over by Judge Michael Keedy - takes too long to resolve cases.

8

In response to this article, the District Court Judge wrote a letter to the editor which appeared in the October 7, 1987 edition of the newpaper, which stated in part:

. . . on the very day the hearing was conducted four months ago I ordered the husband to pay his estranged wife $615 per month pending further notice from the court. (She had been a self-employed seamstress for more than a year before the hearing).

On October 11, 1987, the wife's own letter to the editor appeared in the newspaper, which stated in part:

I am the wife that is mentioned in both the article and letter. . . . My husband and I have been married for over 28 years. He left in October 1986 and filed for divorce a week later. He have (sic) four grown children and three grandchildren. In May my lawyer finally got a "show cause" hearing for more financial support. He was satisfied that Judge Keedy would be handling the case and assured me that he was a fair and just person and we would have a ruling shortly.
A ruling was never made though! The $615 mentioned in the article was already being paid when we went to court. The $200 was to me for maintenance and the $415 was for the payment on the house that my husband and I own jointly. . . .
I do not envy a judge having to make a decision in a divorce case. But courts are suppose (sic) to show mercy. If I had committed a felony, my case would have already gone to trial, a decision made and my fate decided. But my only crime was agreeing to a divorce. Now I wait.

In her Motion for Rehearing, wife alleged that she was denied a fair hearing of her case due to the publications and that the Judge's prejudice was reflected by the manner in which the hearing was conducted and also in the Judge's final order. No ruling was issued on wife's motion within 45 days, so it was deemed denied pursuant to Rule 59(g), M.R.Civ.P.

9

We do not find it necessary for this Court to make a ruling on the issue of disqualification raised by the wife. We do note that a judge's official conduct is to be free from even the appearance of impropriety and that his personal behavior should be beyond reproach as set forth in Canon IV, Canons of Judicial Ethics. In order to eliminate any question of impropriety or impartiality, we direct that on remand, this proceeding shall be assigned for consideration and redetermination by a District Judge other than the one who previously made the determination.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices