No. 03-198

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 160

IN THE MATTER OF JAMES A. LEWIS,

    Petitioner and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. BDV 2001-787
The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Patrick E. Melby, Luxan & Murfitt, Helena, Montana

    For Respondent:

        Kelly A. Jenkins, Public Employees' Retirement Division, Helena, Montana

Submitted on Briefs:  August 7, 2003

Decided:  June 22, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     James A. Lewis (Lewis) appeals the Order of the Montana First Judicial District Court, Lewis and Clark County, affirming the decision of the Montana Public Employees' Retirement Board (the Board) denying Lewis' request to purchase service credit in the Public Employees' Retirement System.  We reverse and remand.

## ISSUE

¶2     A restatement of the issue in this case is whether the District Court properly affirmed the Board's interpretation of law regarding the allowable purchase of service under § 19-3-505, MCA (1979).

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Lewis worked as a Cascade County public defender from October 1977 through March 1980.  During that time, neither he nor Cascade County made contributions to the Montana Public Employees' Retirement System (PERS).  In 1985, Lewis, then working for the Montana Department of Highways (now Department of Transportation) requested permission to purchase service credit to be applied to his retirement account for his time spent with the Cascade County Public Defender's Office.  In 1998, the Board denied his request.

¶4     Lewis requested an administrative hearing, and both Lewis and the Board moved for summary judgment. The hearing examiner, in its proposed order, granted summary judgment in favor of Lewis, concluding that Lewis was entitled to purchase service credit because he

2

was an employee[1] of Cascade County, and that his service was "not creditable service" because retirement contributions were not paid.

¶5      The Board, authorized to make a final decision under A.R.M. 2.43.204(1)(c), rejected the hearing examiner's proposed order, declared Lewis an independent contractor, determined that his service was "creditable" service, and entered summary judgment for itself, thereby denying Lewis' request to purchase service credit. Lewis appealed the Board's decision on several grounds to the First Judicial District Court. The District Court reversed in part and affirmed in part the Board's decision.

¶6      The court reversed the Board's determination that Lewis was an independent contractor and reinstated the hearing examiner's conclusion that Lewis was an employee of Cascade County. That conclusion is not challenged on appeal and, therefore, is the law of the case.

¶7      The District Court affirmed the Board's conclusion that Lewis' service was "creditable" service, and thereby denied him the right to purchase service credit. Lewis appeals this conclusion of the District Court.

---

[1] There had been a question of whether Lewis was an employee or an independent contractor for Cascade County.

**STANDARD OF REVIEW**

¶8     A district court reviews an administrative decision in a contested case to determine whether the findings of fact are clearly erroneous and whether the agency correctly interpreted the law. We employ the same standards when reviewing a district court order affirming or reversing an administrative decision. *Ostergren v. Department of Revenue*, 2004 MT 30, ¶ 11, 319 Mont. 405, ¶ 11, 85 P.3d 738, ¶ 11 (citation omitted).

**DISCUSSION**

¶9     The Montana Public Employees' Retirement System provides retirement accounts and benefits for employees of the State of Montana and, on a contracted basis, for political subdivisions of the state. It is undisputed that throughout the time Lewis was a public defender for Cascade County, the County was a participating employer in PERS.

¶10    Section 19-3-505(1), MCA (1979), allows a person, under certain circumstances, to convert "not creditable" service provided to a public employer to "membership" or "creditable" service, thereby enhancing the employee's retirement account by including contributions to the account for the "not credited" time worked. Section 19-3-505(1), MCA (1979), provides:

> Subject to the provisions of this section, any person who has service with an employer which is *not creditable* service may convert all or a portion of such service to *membership* service by filing written notice thereof with the board. [Emphasis added.]

Lewis provided such written notice to the Board in April 1985.

4

¶11    The following definitions are relevant to our analysis:

"Creditable service" means the aggregate of membership service and prior service. A member employed on a part-time basis shall receive credit for a year of service for each fiscal year during which such member was employed throughout the year and was engaged in his duties the full amount of time he was required by his employment to be so engaged. Section 19-3-104(13), MCA (1979);

"Membership service" means service with respect to which normal contributions and employer contributions are paid. . . . Section 19-3-104(22), MCA (1979).

¶12    As noted above, the hearing examiner concluded that Lewis' service was *not creditable* service and, therefore under § 19-3-505(1), MCA (1979), qualified for conversion to membership service. The Board, on the other hand, concluded that Lewis' service was *creditable* service and, therefore, did not qualify for conversion to membership service. In determining whether the Board correctly classified Lewis' employment with Cascade County as creditable service, the District Court reviewed the above definitions. It concluded that "prior service," as referenced in the definition of "creditable service" was not at issue in this case. Therefore, in order for Lewis' service to be creditable service, it would have had to have been "membership service," *i.e.*, "service [for] which normal contributions and employer contributions are paid."

¶13    Lewis argued that the definition of membership service was clear and unambiguous, the determinative factor being whether contributions were in fact paid or not paid. Because contributions were not paid, his service was not creditable. The Board argued that membership service is that service for which employee and employer contributions *are*

5

*required* to be paid, and that, because both Lewis and the County *were required* to make contributions, Lewis' service was creditable. The Board maintained that failure to make the required contributions was irrelevant to a determination of whether the service was creditable or not creditable.

¶14    The District Court concluded that the language of the statute could be interpreted either way, and that, to determine the legislative intent of the statute, it was therefore necessary to look beyond the plain meaning of the words used in the law. *Ravalli County v. Erickson*, 2004 MT 35, ¶¶ 11-12, 320 Mont. 31, ¶¶ 11-12, 85 P.3d 772, ¶¶ 11-12. The court then utilized the statutory construction rule that requires that a statute be construed as a whole in a manner that would avoid an absurd result and give effect to the purpose of the statute. *Hiett v. Missoula County Public Schools,* 2003 MT 213, ¶ 32, 317 Mont. 95, ¶ 32, 75 P.3d 341, ¶ 32. The court reviewed other statutory provisions addressing the purchase of service credits and concluded that the Board's construction of the statute was correct.

¶15    It has long been the rule in Montana that statutes which on their face are plain and unambiguous, are subject to no additional construction. We recently stated:

> The rules of statutory construction require the language of a statute to be construed according to its plain meaning. If the language is clear and unambiguous, no further interpretation is required. "This Court has repeatedly held that the role of courts in applying a statute has always been to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted . . . [pursuant to] Section 1-2-101, MCA."
>
> "[T]he intent of the Legislature is controlling when construing a statute. The intention of the legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so

determined, the courts **may not go further and apply any other means of interpretation**." If "the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe." [Emphasis added.]

*Ravalli County,* ¶¶ 11-12 (citations omitted).

¶16 The application of this rule to the definition of "membership services" compels the result urged by Lewis. Section 19-3-104(22), MCA, is clear on its face. It plainly speaks for itself. "Membership service" is defined as service with respect to which contributions "are paid." It is not defined in terms of a service for which contributions "ought to be paid" or "are required to be paid." As correctly noted by the hearing examiner, "'are' is not synonymous with 'are required to be,' and . . . cannot be so construed. 'Are' clearly implies something that exists. 'Are required to be' implies a condition that must be met . . . ." The District Court and the Board erroneously inserted language that the legislature had not chosen to insert. Under the facts here and the statute as written, Lewis' service was not membership service. As a result, it was not creditable service.

¶17 In summary, Lewis was an employee, not an independent contractor, Cascade County was a participating member of PERS, and Lewis' service was not creditable service. Under § 19-3-505, MCA (1979), Lewis is entitled to purchase service credits in the PERS.

¶18 While we appreciate the Board's concern that today's ruling and interpretation of §§ 19-3-104(22) and 19-3-505(1), MCA (1979) may have unintended consequences, we note that the subject definitions underwent substantial changes in 1993, and thus may not remain subject to this interpretation. Moreover, should the legislature conclude that our

7

interpretation or application of the statute is inconsistent with its intention, it is the charge and responsibility of that governmental body to write and revise the laws in a manner that clearly expresses its intent.

¶19 The Board maintains that should this Court reverse the District Court's Order, a remand will be necessary to resolve outstanding issues. The Board takes issue with the hearing examiner's use of the 1979 statute, chosen as the representative statute in effect at the time Lewis worked for Cascade County[2], as opposed to use of the 1983 statute, which was in effect at the time Lewis first requested permission to purchase service credit. However, the Board failed to raise this issue when challenging the hearing examiner's proposed order; therefore, it may not do so before this Court. *Hilands Golf Club v. Ashmore*, 2002 MT 8, ¶ 21, 308 Mont. 111, ¶ 21, 39 P.3d 697, ¶ 21.

¶20 The Board also claims that the appropriate amount of service credit is unresolved. The Board asserts that to establish the appropriate amount of service to be credited, Lewis must submit "normal employer reports" reflecting compensation and the specific number of hours worked. However, the hearing examiner concluded, and the Board did not dispute, that Lewis was a part-time employee of Cascade County. Moreover, Cascade County indicated to the Board that neither employment records nor an employment contract existed during Lewis' time as a Cascade County public defender. Despite the lack of such formal

---

[2] The relevant statutes in effect in 1977, 1978, 1979 and 1980 were identical. The hearing examiner therefore chose the statute in effect during Lewis' last full year with the public defenders' office.

8

employment records, Cascade County was able to submit to the Board a list of twenty-nine monthly payments to Lewis, designated as "Monthly Service" and paid between November 22, 1977, and March 25, 1980. The records also revealed the amount of money he was paid for each of those months. In addition to this payment list, Cascade County submitted affidavits of Howard Strause and Daniel Donovan, who were the Chief and Assistant Public Defenders during the time frame in question. Both Strause and Donovan worked with Lewis and confirmed his part-time employment status and the absence of employment records.

¶21    Section 19-3-104(13), MCA (1979), provided that "[a] member employed on a part-time basis shall receive credit for a year of service for each fiscal year during which such member was employed throughout the year and was engaged in his duties the full amount of time he was required by his employment to be so engaged." The statute did not require that the employee provide detailed employment records specifying the number of hours per week that were worked. It merely required that the employee worked the full amount of time he was required to do so. We conclude that the payment record submitted to the Board adequately show that Lewis is entitled to service credit for twenty-nine months.

¶22    We agree with the Board that issues surrounding the cost of purchasing service credit for Lewis' employment with Cascade County have not been resolved. Therefore, for the foregoing reasons, we reverse the District Court's Order and remand to the Board for an assessment of the service purchase price based upon the Cascade County payment schedule previously submitted.

9

¶23     Were this issue resolvable without remanding to the Board, we would not subject Lewis to further administrative process.  After all, his request has been pending since 1985.  However, we are unfortunately left with no other option.  Given that almost twenty years has gone by since Lewis first requested permission to purchase service credit, we strongly urge the Board to act expeditiously on this matter and provide a prompt and reasonable assessment to Lewis.

¶24     Reversed and remanded.

/S/ PATRICIA O. COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM REGNIER