No. 05-109

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 111

IN RE THE MARRIAGE OF
RODNEY PIERCE MARKEGARD,

             Petitioner and Respondent,

     and

JANE L. MARKEGARD

             Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DR-03-1087
                Honorable Ingrid Gustafson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

              Jock B. West; Attorney at Law, Billings, Montana

        For Respondent:

              Mark D. Parker, Shawn P. Cosgrove; Parker, Heitz & Cosgrove
              Billings, Montana

                              Submitted on Briefs: December 21, 2005

                                   Decided:   May 23, 2006

Filed:

        _____
                          Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Jane L. Markegard (Jane) appeals from the order entered by the Thirteenth Judicial District Court, Yellowstone County, denying her motion for relief from judgment and from the underlying judgment in this dissolution proceeding. We affirm.

¶2 The restated issues on appeal are:

¶3 1. Did the District Court abuse its discretion by denying Jane's second post-trial motion, in which Jane first requested recusal or disqualification of the presiding judge due to Jane's pre-petition meeting with the judge in her prior capacity as an attorney?

¶4 2. Did the District Court abuse its discretion in distributing the marital estate?

**BACKGROUND**

¶5 In August of 2003, Rodney Pierce Markegard (Rod) petitioned for dissolution of his marriage to Jane. Judge Diane G. Barz originally presided over the case, and Judge Ingrid Gustafson took her place in January of 2004. The case proceeded to trial on November 10, 2004, and the District Court entered a decree of dissolution on November 16, 2004. The court characterized a business as Rod's premarital asset and traced all but $23,179 of the proceeds from the sale of the home in which Rod and Jane lived to Rod's premarital assets and Rod's inheritance. In distributing the marital assets and debts, the court awarded Rod the real property where the business was located, along with certain associated debts.

¶6 Pursuant to Rules 59(a) and 60(b)(3), M.R.Civ.P., Jane moved to reopen the hearing so she could submit additional evidence on a matter relating to the property distribution. The

2

District Court denied the motion on December 10, 2004, and Rod served Jane with notice of entry of judgment.

¶7 On January 26, 2005, Jane moved for reconsideration of the previously denied motion to reopen the hearing or, alternatively, for relief from judgment pursuant to Rules 60(b)(2) and 60(b)(6), M.R.Civ.P. She did not argue that the District Court had improperly denied her motion to reopen the hearing, but asked Judge Gustafson to vacate the judgment, grant a new trial and recuse herself based on "past representation and legal advise [sic] given to [Jane]" by Judge Gustafson before she became a judge.

¶8 In support of her Rule 60(b) motion, Jane filed her affidavit stating she had told her counsel on January 21, 2005, that, before Judge Gustafson assumed the bench, Jane had consulted with her for "somewhere between one and two hours," obtained her "opinion as to the divorce expectations," and paid for her services. Jane further averred that she and attorney Gustafson discussed "her marital situation, her marital strategy and other confidential information concerning her relationship with [Rod]." She stated she did not previously tell her counsel about the consultation—"even though [she] recognized the Judge at the time of the hearing on the dissolution proceedings" in November of 2004—because she "was intimidated by the proceedings, and did not know the appropriate information to pass on to her counsel." She stated "third parties" encouraged her to report the prior contact. She also stated she believed the knowledge gleaned during the consultation "may have influenced the Court, or at a minimum, your affiant's confidence has been diminished that your Honor could fairly rule on the marital issues due tho [sic] this past representation."

3

¶9      The District Court denied Jane's motion. In the order, Judge Gustafson stated she had contacted her former law firm and learned she had met for 1.3 hours with Jane on July 28, 2003, Jane had paid $108 for the consultation, and Jane did not retain Gustafson or the firm. Judge Gustafson further related that, to avoid the appearance of impropriety in other cases, she had recused herself immediately upon learning she had represented a party or met with a prospective litigant in her capacity as an attorney. In addition, Judge Gustafson stated that, other than her post-judgment review of the firm's records, she had "no recollection, whatsoever, of ever consulting with [Jane]," she did not remember the subject matter of the consultation—although she presumed it likely was related to dissolution issues—and she had not recognized Jane or the circumstances of the case during the proceedings. The judge explained she "would not hesitate to set aside the Judgment entered herein if [she] believed that her encounter with [Jane] . . . in any way influenced, biased or prejudiced the Court's Findings of Fact, Conclusions of Law and Decree of Dissolution. Such is not the case." Judge Gustafson suggested that, if the decree of dissolution had adopted Jane's proposed property distribution, Jane likely would not have reported the consultation and "would have been content to, in essence, reap the benefit of any prior contact[.]" The judge opined Jane was "merely seeking another bite at the apple," expressed concern about Jane's "apparent game playing" and stated she was denying Jane's motion "to protect the integrity of the Judiciary . . . and to avoid the blatant manipulation of this Court[.]"

¶10     Jane appeals. We set forth additional facts in the discussion below.

**STANDARD OF REVIEW**

4

¶11 We review a district court's denial of a Rule 60(b), M.R.Civ.P., motion for abuse of discretion. *See In re P.D.L.*, 2004 MT 346, ¶ 8, 324 Mont. 327, ¶ 8, 102 P.3d 1225, ¶ 8 (citation omitted). We review a district court's distribution of property in a marriage dissolution case to determine whether the findings of fact are clearly erroneous; if the findings are not clearly erroneous, we affirm unless the district court abused its discretion. *See In re Marriage of Grende*, 2004 MT 36, ¶ 18, 320 Mont. 38, ¶ 18, 85 P.3d 788, ¶ 18 (citations omitted).

## DISCUSSION

¶12 *1. Did the District Court abuse its discretion by denying Jane's second post-trial motion, in which Jane first requested recusal or disqualification of the presiding judge due to Jane's pre-petition meeting with the judge in her prior capacity as an attorney?*

¶13 On appeal, Jane barely acknowledges that the procedural posture of this appeal involves her challenge to the District Court's denial of her Rule 60(b), M.R.Civ.P., motion for relief from judgment. Jane's argument is that Judge Gustafson was disqualified under § 3-1-803(3), MCA, or was required to recuse herself after judgment to avoid "the appearance of impropriety." In this regard, Jane mistakenly sets forth the "correctness" standard of review—generally applicable to conclusions of law—rather than the "abuse of discretion" standard applicable to the denial of her motion for relief from judgment. We begin with Rule 60(b), M.R.Civ.P., because Jane submitted her post-judgment motion—and the District Court decided it—under that rule.

¶14 Rule 60(b), M.R.Civ.P., provides, in pertinent part, that

> [o]n motion and upon such terms as are just, the court may relieve a party or a
> party's legal representative from a final judgment, order, or proceeding for the

5

following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); . . . or (6) any other reason justifying relief from the operation of the judgment.

The only possible reference in Jane's appellate briefs to the "newly discovered evidence" requirement of Rule 60(b)(2), M.R.Civ.P., is the statement that her motion "was based upon the discovery that the trial Court had represented [Jane] prior to taking the bench."  She does not argue that the pre-petition consultation was "evidence," nor does she assert—in light of her affidavit stating she was aware of the consultation at the time of trial—the consultation was "newly discovered" or could not have been discovered by her "due diligence." Therefore, we conclude Jane has not established the basis for relief from judgment set forth in Rule 60(b)(2), M.R.Civ.P.

¶15    With respect to the Rule 60(b)(6), M.R.Civ.P., "any other reason justifying relief" basis, Jane first advances § 3-1-803(3), MCA, which provides, in part, that

> [a]ny justice, judge, justice of the peace, municipal court judge or city court judge must not sit or act in any action or proceeding:
>      . . . .
>      3.  When he has been attorney or counsel in the action or proceeding for any party[.]

Section 3-1-803(3), MCA, is a Supreme Court Rule codified in the Montana Code Annotated for the benefit of code users.  Sec. 2, Ch. 1, L. 1979.  In a section of her District Court brief entitled "law," Jane quoted § 3-1-803, MCA, in its entirety but provided no analysis, authorities, or application relating to any subsection of the rule.  The District Court did not address § 3-1-803(3), MCA, in its order.  Moreover, although the District Court did not expressly refer to the "upon such terms as are just" portion of Rule 60(b), M.R.Civ.P., its

6

order—including the statements set forth above—clearly indicates the court did not believe it would be just to grant Jane relief from judgment.

¶16 A Rule 60(b)(6), M.R.Civ.P., motion requires a showing that "'something prevented a full presentation of the cause or an accurate determination on the merits and that for reasons of *fairness and equity* redress is justified.'" *In re Marriage of Schoenthal*, 2005 MT 24, ¶ 35, 326 Mont. 15, ¶ 35, 106 P.3d 1162, ¶ 35 (citation omitted) (emphasis added). The record before us is clear that, at the time of the November 10, 2004 hearing, Jane was aware of having consulted with attorney Gustafson and Judge Gustafson was not. Moreover, Jane does not challenge the District Court's statement that Jane knew of the pre-petition consultation and did not advise her counsel or the court for the entire year of 2004. Jane could have requested recusal pursuant to § 3-1-803(3), MCA, at any time after she became aware that she had consulted with the presiding judge, but waited until her second post-trial motion to do so. We conclude the District Court properly considered the fairness and equity factors of the case and did not abuse its discretion in denying Jane's Rule 60(b), M.R.Civ.P., motion on those grounds.

¶17 We turn next to Jane's arguments on appeal regarding § 3-1-803(3), MCA. She contends that § 3-1-803(3), MCA, is mandatory, clear, and concise, and "the clear facts are that Judge Gustafson represented Jane Markegard in divorce matters. The Judiciary has a much higher duty to disqualify itself to comply with statutory and case law then [sic] the lay public." She asserts § 3-1-803(3), MCA, does not contain a time limit, an exception for a judge's failure to recall counseling a party or prospective litigant, or a provision for

considering whether a party is seeking another bite at the apple.

¶18     Section 3-1-803(3), MCA, prohibits a judge from presiding in an action or proceeding "[w]hen he has been attorney or counsel in the action or proceeding for any party[.]" Although § 3-1-803(3), MCA, is a codified Court rule rather than a legislatively-initiated statute, the first step in construing intent is to examine the plain language of the writing and, if the language is clear and unambiguous, we may not proceed to apply any other means of interpretation. *See, e.g.*, *In re Lewis*, 2004 MT 160, ¶ 15, 322 Mont. 13, ¶ 15, 92 P.3d 1218, ¶ 15 (citation omitted).

¶19     It is undisputed that Judge Gustafson did not act as "attorney or counsel *in the action or proceeding*" at issue here.  Jane does not challenge Judge Gustafson's statement that the consultation occurred in July of 2003, before Rod filed his dissolution petition in August of 2003.  Judges routinely—and properly—recuse themselves *sua sponte* from cases involving parties or persons they recall having represented at some previous time; the record in the present case reflects that Judge Gustafson follows this practice.  We conclude, however, that the plain language of § 3-1-803(3), MCA, does not prohibit a judge from presiding in an action or proceeding unless the representation occurred in the action or proceeding.  Of course, we may amend § 3-1-803(3), MCA, at any time, as we recently amended § 3-1-803(2), MCA, with respect to the disqualification of judges based on relationships by consanguinity or affinity.  *See* Montana Supreme Court Order dated Dec. 5, 2000, entitled "In re Modification of the Rule on Disqualification of Judges."  Currently, however, we are bound by the language we have chosen.

8

¶20 Our jurisprudence on judicial disqualification, under current rules or their predecessors, is not extensive. We have decided a number of cases involving § 3-1-805, MCA, and its predecessors, which relate to a party's motion to disqualify a judge based on an allegation of personal bias or prejudice. *See, e.g.*, *Dambrowski v. Champion Intl. Corp.*, 2000 MT 149, ¶¶ 48-51, 300 Mont. 76, ¶¶ 48-51, 3 P.3d 617, ¶¶ 48-51; *State v. Duncan* (1981), 191 Mont. 253, 255, 623 P.2d 953, 954. Jane does not rely on § 3-1-805, MCA, which requires the filing of an affidavit alleging judicial bias more than 30 days before the date set for hearing or trial. Jane did not timely file such an affidavit and, as a result, our decisions addressing § 3-1-805, MCA, and its predecessors are inapplicable.

¶21 With the exception of *Shultz v. Hooks* (1994), 263 Mont. 234, 867 P.2d 1110, our cases addressing § 3-1-803(3), MCA, and its predecessors are over one hundred years old. It is appropriate to address *Shultz* here, even though neither party has raised it, because it is our most recent authority on § 3-1-803(3), MCA. In *Shultz*, a district court awarded default judgment against an attorney in a legal malpractice case which centered on the attorney's representation of a client in an action against the client's father regarding the father's guardianship of the client and management of a personal injury settlement. The court also awarded the plaintiff compensatory damages, punitive damages and costs. *Shultz*, 263 Mont. at 235, 867 P.2d at 1111. After three writs of execution on the default judgment, the attorney moved for relief from judgment pursuant to Rule 60(b), M.R.Civ.P., based on an assertion that the presiding judge had once represented the client. *Shultz*, 263 Mont. at 235-36, 867 P.2d at 1111-12. Pursuant to Rule 60(c), M.R.Civ.P., the motion was deemed denied when

9

the district court did not timely rule on it. *Shultz*, 263 Mont. at 235, 867 P.2d at 1111.

¶22 On appeal, we observed the presiding judge had represented the client approximately fifteen years before the malpractice action commenced and, during that representation, he had attempted to locate information about the father's guardianship of the client and a related accounting. We also noted the subsequent attorney's representation of the client in the guardianship matter was "the substance of the malpractice charges[.]" *Shultz*, 263 Mont. at 236, 867 P.2d at 1112. We then recited § 3-1-803(3), MCA, and concluded the judge was required to disqualify himself, stating:

> [t]he malpractice action here is a direct result of [the attorney's] representation of [the client] in the action for a guardianship accounting—an action in which [the judge] also represented [the client]. Although we conclude that [the judge] was required by § 3-1-803, MCA, to disqualify himself from presiding over the subsequent malpractice action against [the attorney], we emphasize that there is absolutely nothing in the record to indicate any wrongdoing or unethical conduct on the part of [the judge]. [The judge] represented [the client] for a short period of time beginning nearly eighteen years ago and his representation did not progress to the point of filing an action against [the client's] guardian, but rather, merely involved preliminary investigation.
>
> A judge is not prevented from presiding over matters which involve his or her prior clients if the action involves another matter. Although this malpractice action is technically a separate action from the underlying suit against [the client's] father relating to the guardianship, it arises from the legal representation in that lawsuit, albeit the representation by [the attorney] and not that of [the judge].

We reversed and remanded. *Shultz*, 263 Mont. at 237, 867 P.2d at 1112.

¶23 As is often true with precedent, *Shultz* could be distinguished from the present case. Unlike the attorney's assertion in *Shultz* regarding the judge's prior representation of an *opposing* party, Jane has raised *her own* interaction with Judge Gustafson. Moreover, we did

10

not address in *Shultz* whether the defendant attorney or the presiding judge knew of the prior representation before or immediately after the default judgment, while the record here is clear and undisputed that Jane knew—and Judge Gustafson did not know—about their pre-petition consultation. In addition, we note our remand in *Shultz* for substitution of another judge to rule on the merits of the attorney's motion for relief from judgment—the very issue we had already decided in the attorney's favor—was inappropriate. *See Shultz*, 263 Mont. at 237, 867 P.2d at 1112. Instead, having concluded the attorney's motion was improperly deemed denied, we should have ordered substitution of another judge to preside over the underlying malpractice action.

¶24 Most importantly, however, our interpretation of § 3-1-803(3), MCA, in *Shultz* went beyond the plain language of the rule. Section 3-1-803(3), MCA, states a judge is disqualified when he or she "has been attorney or counsel *in the action or proceeding* for any party." Having recognized in *Shultz* that the malpractice suit was a separate action from the guardianship-related matter and the judge had not acted as attorney or counsel in any action or proceeding, we were obligated to conclude that § 3-1-803(3), MCA, did not require disqualification. We did not do so. To the extent *Shultz* states § 3-1-803(3), MCA, precludes a judge from sitting on a case in which he or she has rendered services for a person before an action is filed or has acted as a party's attorney in a separate related case, we overrule it. We conclude § 3-1-803(3), MCA, does not require disqualification of Judge Gustafson due to the pre-petition consultation with Jane.

¶25 Next, relying on *Washington v. Montana Min. Properties* (1990), 243 Mont. 509, 795

11

P.2d 460, and *In re Marriage of Miller* (1989), 239 Mont. 12, 778 P.2d 888, Jane contends Judge Gustafson should have recused herself to avoid the appearance of impropriety. We disagree.

¶26 In *Washington*, this Court issued a writ of supervisory control to remove a judge from a case. There, the judge's social interaction at a football game with attorneys from a party's law firm during the opposing party's pending disqualification motion and his son's internship at the law firm did not, by themselves, require disqualification. However, those facts—combined with the judge's admission of testimony from one of the law firm's attorneys at an injunction hearing, in violation of Rule 3.7(a) of the Montana Rules of Professional Conduct, and a newspaper article about the case and the football game interaction—had "snowballed to create an appearance of impropriety." *Washington*, 243 Mont. at 515-16, 795 P.2d at 464. Thus, *Washington* concerned a party's contentions about a judge's multiple interactions with the *opposing* party—of which the judge was almost certainly aware—which "snowballed" to create an appearance of impropriety leading to the issuance of a writ of supervisory control. Jane's Rule 60(b), M.R.Civ.P., motion regarding *her own* single pre-petition consultation with attorney Gustafson—which Judge Gustafson did not remember—bears no resemblance to the facts in *Washington*. Therefore, *Washington* does not support Jane's position.

¶27 In *Miller*, we first concluded a district court's findings and conclusions in a dissolution proceeding contained sufficient errors to warrant reversal. *Miller*, 239 Mont. at 15-17, 778 P.2d at 890-91. We then determined it was not necessary to rule on the wife's contention, as argued in her post-trial motion, that the presiding judge should have

12

disqualified himself due to certain writings published in a local newspaper, including the judge's letter to the editor. However, we directed that, to eliminate any question of impropriety or impartiality on remand, the proceeding would be assigned to a different district judge. *Miller*, 239 Mont. at 17-19, 778 P.2d at 891-92.

¶28     Having expressly declined to rule on the disqualification issue in *Miller*, that case has no bearing on Jane's argument that she is entitled to post-judgment disqualification here. Further, unlike *Miller*, we need not determine here whether assignment of a different judge for future proceedings is appropriate pursuant to the "appearance of impropriety" standard because, as discussed below, we are not reversing and remanding this case for any error.

¶29     *Washington* and *Miller* are the only authorities Jane advances for her position that she is entitled to relief from judgment based on an "appearance of impropriety." In addition to not supporting Jane's position with respect to establishing an "appearance of impropriety," those cases do not address the additional inquiry required in the present case by Rule 60(b), M.R.Civ.P., as to the fairness, equity or "just" considerations involved in deciding a motion for relief from judgment, as discussed above.

¶30     The appellant bears the burden of establishing error. *McDermott v. Carie, LLC*, 2005 MT 293, ¶ 22, 329 Mont. 295, ¶ 22, 124 P.3d 168, ¶ 22 (citation omitted). Jane has not established an appearance of impropriety or entitlement to relief from judgment pursuant to Rule 60(b), M.R.Civ.P.

¶31     We hold the District Court did not abuse its discretion in denying Jane's second post-trial motion, in which she first requested recusal or disqualification of the judge due to the

13

pre-petition consultation.

¶32    *2. Did the District Court abuse its discretion in distributing the marital estate?*

¶33    The District Court found, among other things, that (1) except for $23,179, the home sale proceeds were traceable to Rod's premarital assets and inherited funds; (2) a business was Rod's premarital asset; and (3) the real property where the business was located, which the court valued at $125,000, was a marital asset and certain debts on the real property were marital debts. In distributing the marital assets and debts, the court awarded the real property, as well as certain related marital debts, to Rod. After tallying the assets and debts allocated to each party, the court required Rod to make an "Equalization Payment" of $36,583 to Jane from an account containing proceeds from the sale of the home where Jane and Rod had lived. The total value awarded to each party was $42,583.

¶34    Jane asserts that, in distributing the marital estate, the District Court failed to consider the factors set forth in § 40-4-202, MCA. She makes no argument, however, regarding which factors the court allegedly failed to consider or the impact of those alleged failures. The appellant bears the burden of establishing error, and Rule 23(a)(4), M.R.App.P., requires an appellant to support arguments with citations to relevant authorities. *Rolison v. Deaconess*, 2005 MT 95, ¶ 20, 326 Mont. 491, ¶ 20, 111 P.3d 202, ¶ 20 (citation omitted). This Court has no obligation to formulate arguments on a party's behalf; thus, we decline to address § 40-4-202, MCA, further. *See In re Marriage of Grende*, ¶ 31 (citation omitted).

¶35    Jane's primary contention is that the District Court's division of the martial property was not equitable. She points to testimony that the parties viewed the marriage as

14

"traditional" and "commingled" their assets. Relying on *Zell v. Zell* (1977), 174 Mont. 216, 220, 570 P.2d 33, 35, and *Biegalke v. Biegalke* (1977), 172 Mont. 311, 316, 564 P.2d 987, 990, she argues she is entitled to one-half of the value of the home, business and business real property based on her work for the business and her contributions as a homemaker and, further, she is not required to trace her contributions to the marital estate. In this respect, we note Jane's observations on appeal that she received a salary for her work at the business and that she testified both she and Rod contributed to the upkeep of the home.

¶36    *Zell* and *Biegalke* involved the distribution of marital assets—that is, assets that were acquired or appreciated in value during the marriage. *See Zell*, 174 Mont. at 217, 570 P.2d at 33; *Biegalke*, 172 Mont. at 313, 564 P.2d at 988. Here, the District Court made several findings supporting its determinations that the business was Rod's premarital asset and most of the home sale proceeds were traceable to Rod's premarital assets and his inheritance. With respect to the business, the court found Rod had operated the business as a sole proprietor from 1991 until the business' incorporation in 2001, the "incorporation during the marriage does not alter the pre-marital nature of [Rod's] business," "[i]n essence, [Rod] is the business," and "[t]he business entity itself did not appreciate during the marriage." The District Court also found, among other things regarding the home, that Rod brought the value of his debt-free home into the marriage, both he and Jane contributed to improvements on that home—including $23,179 contributed by Jane and a $32,000 inheritance contributed by Rod—before they sold it, and a subsequently purchased home had not appreciated in value or resulted in a gain in equity through mortgage reduction during the marriage. With one

15

exception, discussed below, Jane does not challenge these findings regarding the *premarital* nature of the business and most of the home sale proceeds. Thus, her reliance on *Bell* and *Biegalke*—which concern *marital* assets—is misplaced.

¶37     Jane does challenge the District Court's determination that she contributed $23,179 to the improvements on the home Rod brought into the marriage. She argues Rod "acknowledged that [Jane] contended that she had contributed over $50,000.00 to the family but acknowledged only one payment of $26,000.00." Rod's acknowledgment of Jane's *contention* is irrelevant. However, the record reflects conflicting testimony from Rod and Jane regarding the amount Jane received for the sale of her premarital home. During cross-examination of Jane, Rod's counsel entered into evidence—without objection—a settlement statement for the sale of Jane's premarital home reflecting a payment of $23,179. Jane insisted she had received a second payment, but admitted she could not provide any documentation to support her testimony or to demonstrate Rod had not been truthful. In this regard, we note Jane does not appeal from the District Court's denial of her first post-trial motion, in which she requested that the court reopen the hearing to receive additional evidence of the alleged second payment.

¶38     A finding is clearly erroneous if it is not supported by substantial credible evidence, the district court misapprehended the effect of the evidence or, after reviewing the record, this Court is convinced the district court made a mistake. *See In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, ¶ 10, 124 P.3d 1151, ¶ 10 (citation omitted). Credibility determinations are within the province of the finder of fact—here, the District Court. *See In*

16

*re Marriage of Gerhart*, 2003 MT 292, ¶ 21, 318 Mont. 94, ¶ 21, 78 P.3d 1219, ¶ 21 (citations omitted). We conclude, based on the settlement statement and testimony at trial, that the District Court's determination that Jane contributed $23,179 to the home was supported by substantial credible evidence and was not otherwise clearly erroneous.

¶39 We conclude the District Court did not err in finding the business was Rod's premarital asset and the net proceeds of the home, except for $23,179, were traceable to Rod's premarital assets and his inheritance. In addition, we do not discern any abuse of discretion in those regards.

¶40 With respect to the real property where the business was located, Jane asserts the District Court should have "subtracted" two debts associated with purchasing the property and then divided the remaining equity equally because all payments made on the real property were made by the parties during the marriage. The District Court found the real property was acquired during the marriage and, therefore, was a marital asset which it valued at $125,000. The court found Rod and Jane purchased the property for $65,000 and debts related to the purchase—$20,000 owed to Rod's father and $39,314.25 owed to a bank— were marital debts. The court allocated the real property and the specified marital debts to Rod as part of the marital estate and, as mentioned above, ordered Rod to make an "Equalization Payment" of $36,583 to Jane from the account containing the home sale proceeds.

¶41 Jane offers no authority, as required by Rule 23(a)(4), M.R.App.P., for the proposition that a court must equitably divide each marital asset after "subtracting" related marital debts,

17

rather than equitably distributing the entire marital estate. We conclude the District Court did not err in determining the real property where the business was located—and certain related debts—were marital, and did not abuse its discretion in distributing them to Rod as part of the marital estate.

¶42 We hold the District Court did not abuse its discretion in distributing the marital estate.

¶43 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice John Warner dissents.

¶44 I would reverse the denial of Jane's Rule 60(b)(6) motion for relief from the judgment, vacate the judgment and remand this matter for a new trial before a different judge. I would also order her to pay the costs of this action to date.

¶45 Approximately one month before this divorce action commenced, Judge Gustafson met with Jane. At the time, Judge Gustafson was a practicing attorney. She consulted with Jane regarding her inevitable divorce proceedings. Jane confided in Gustafson confidential facts, pertinent to these divorce proceedings, which undoubtedly fall under the protection of the attorney-client privilege. Further, Judge Gustafson provided Jane with her legal opinion and charged her a fee. Consequently, the Court's determination that Judge Gustafson never

18

acted as an attorney or counsel in this proceeding is nothing short of astounding. Indeed, the Court must go as far as overruling the longstanding precedent of *Shultz v. Hooks* (1994), 263 Mont. 234, 867 P.2d 1110, to arrive at its erroneous conclusion.

¶46    In *Shultz*, this Court clearly held that § 3-1-803(3), MCA, disqualifies a judge from presiding over a matter in which she represented one of the litigants at some time in that matter. *Shultz*, 263 Mont. at 237, 867 P.2d at 1112. Under *Shultz*, the prior representation need "not progress to the point of filing an action[.]" *Shultz*, 263 Mont. at 237, 867 P.2d at 1112. In my view there is no justification for ruling to the contrary on this day. The Court claims that *Shultz* could be distinguished because there was prior representation of an opposing party in that case. However, § 3-1-803(3), MCA, disqualifies the judge when she "has been attorney or counsel . . . for *any* party." (emphasis added).

¶47    Judge Gustafson acted as Jane's attorney and was thus disqualified from taking any action in this case under the plain language of § 3-1-803(3), MCA. She therefore had no discretion to abuse. The Court's application of the abuse of discretion standard is thus irrelevant, as well as its discussion of a "fairness and equity" requirement under Rule 60(b)(6), M.R.Civ.P. The standard provided by § 3-1-803(3), MCA, is an objective one and Rule 60(b)(6), M.R.Civ.P., is the procedural mechanism for relief from the operation of the judgment.

¶48    In addition to misconstruing the plain language of § 3-1-803(3), MCA, and overruling longstanding Montana precedent correctly interpreting such, the Court disregards the precedent of sister states that have correctly applied similar provisions. *See e.g., Estate of*

19

*Risovi* (1988), 429 N.W.2d 404; *Slaven v. Wheeler* (Tex. 1882), 58 Tex. 23, *3 (the prior relationship required to disqualify the judge "may exist with respect to a matter not in suit, and even though no fee was paid or charged for the advice."), *followed by Williams v. Kirven* (Tex. Ct. App. 1976), 532 S.W.2d 159.1  In *Risovi*, the Supreme Court of North Dakota considered the effect of a judge's involvement in an action where he had given advice about that case to one of the parties, before becoming a judge. *Risovi*, 429 N.W.2d at 405-406.  The Court reversed and remanded for new proceedings as it concluded the judge was disqualified for prior representation of a litigant. *Risovi*,  429 N.W.2d at 408.  Like the case at hand, the judge in *Risovi* had consulted with one of the parties, prior to becoming a judge, advised the party as to matters relevant to the case, and billed him for his services. *Risovi*, 429 N.W.2d at 405.  The judge's representation went no further, and the party was represented by different counsel when the action was filed.  *Risovi*, 429 N.W.2d at 405.  The *Risovi* Court stated:

> Generally, prior legal advice to a party disqualifies a judge from acting in the same controversy.  "It is sufficient to disqualify a judge that he had given legal advice to a party in connection with the subject matter before litigation began; it is not necessary that he was connected with the particular matter as a pending suit."

*Risovi*, 429 N.W.2d at 406 (quoting 46 Am.Jur.2d *Judges* § 185).

¶49    As this Court notes in its Opinion, a judge is disqualified from sitting or acting if "he has been attorney or counsel in the action or proceeding for any party."  Section 3-1-803(3), MCA.  To distinguish § 3-1-803(3), MCA, as the Court impliedly has, from the analogous

---

1 *See also* William W. Kilgarlin and Jennifer Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 611-612 (1986) ("If a judge has at anytime been consulted by and

20

rules of other jurisdictions, simply because § 3-1-803(3), MCA, uses the terms "action or proceeding" as opposed to "matter" is illogical.  In doing so, the Court, perhaps unintentionally, sets a precedent that an attorney may represent someone, yet will not later be disqualified as a judge in that matter, as long as she was not counsel of record when the "action" was brought.  This is imprudent.

¶50   Further, the language of the statute does not change the policy behind it.  The rationale for the disqualification of a judge under these circumstances lies in the consequence of any former attorney-client relationship: that the former attorney-turned-judge was in a position to obtain prior knowledge of disputed evidentiary facts.   Richard E. Flamm, *Judicial Disqualification*, § 11.2.2 (1996).

> In such a situation there is a danger that a judge, in passing judgment, will not rely solely on the facts that have been properly presented by the parties during the course of the action but also on his own recollection of the facts. . . .  Indeed, when a judge possesses personal knowledge of evidentiary facts, his own recollection is likely to weigh far more heavily than any testimony that may be given in open hearings.  As a consequence of his personal knowledge, moreover, the judge even may have expressed an opinion on the very matter in controversy.

Flamm, § 11.2.2; *see also* John Leubsdorf, *Theories of Judging and Judge Disqualification*, 62 N.Y.U.L.Rev. 237, 282 n.225 (1987) (sufficient grounds for disqualification may exist because the "representation gives the judge an interest in vindicating the positions she formerly advocated [or] an emotional commitment [is] likely to lead her to slant her behavior as a judge.").

---

given advice to one of the litigants in a particular case as to the matters in dispute . . . he is disqualified.").

21

¶51     This rationale clearly applies to the facts of this case.  Judge Gustafson claims that, at the time of the proceedings, she did not remember having counseled Jane on a prior occasion.  However, the subjective awareness of the judge is irrelevant in this analysis.  The underlying consideration in any case is the appearance of impartiality. *See* Leslie W. Abramson, *Judicial Disqualification under Cannon 3 of the Code of Judicial Conduct*, 55 (2d ed. 1992); *see also Liljeberg v. Health Services Acquisition Corp.* (1988), 486 U.S. 847, 864, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855, 875 ("We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice.") (internal quotation omitted).    Thus, regardless of the extent of the judge's recollection of the prior representation, the fact that the representation took place, and that fact alone, satisfies the requirement for disqualification.

¶52     The Court attempts to justify its decision with the specific facts and "equities" of this case, contending that by granting Jane's motion for a new trial, she would be permitted to abuse the system or improperly have "another bite at the apple."  As previously stated, such considerations are plainly irrelevant.  Section 3-1-803, MCA, is to be strictly construed. *See State v. Duncan* (1981), 191 Mont. 253, 255, 623 P.2d 953, 954.  Therefore, this is not a question of "who knew what" or "who remembered who."  As a result of her prior representation, Judge Gustafson was prohibited from sitting or acting in this case.  She never had the authority to preside over this matter.

¶53     Of course Jane is not blameless here.  She did remember that she had previously counseled with Judge Gustafson, and yet she said nothing. She waited until the entire district

22

court process had been completed, and only after a decision was made did she complain. I would conclude that such conduct was unreasonable and vexatious.

¶54    Jane is thus in direct violation of § 37-61-421, MCA, which provides:

> An attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct.

¶55    In my view, the law is clear. This Court has no choice but to reverse the order of the District Court denying relief from judgment under Rule 60(b)(6), M.R.Civ.P., vacate the judgment, and order that a different judge be assigned the case for further proceedings. Such further proceedings would first include a hearing to set the amount Jane is required to pay for costs, expenses, and attorney fees incurred by Rod, in both the District Court and this Court, up to and including the disposition of this appeal.

¶56    I dissent.


/S/ JOHN WARNER


Justices Patricia Cotter and James C. Nelson join in the foregoing dissent.

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

Justice James C. Nelson dissents.

23

¶57    I join Justice Warner's well-reasoned dissenting opinion. In its rush to punish Jane for her conduct (which we all condemn[1]), the majority have set an enormously bad precedent—indeed, one which makes a laughingstock of Canon 4 of the Judicial Canons of Ethics. This Canon provides that "[a] judge's official conduct should be free from . . . the appearance of impropriety . . . ."

¶58    In bald terms, what the majority now permits is this: Attorney Smith, for his usual fee, gives legal advice to XYZ Company about its dispute with ABC, Inc., over the parties' widget dealership contract. A month later, Smith is appointed (or is elected) judge of the local trial court. Within a few weeks, XYZ Company, represented by new counsel, sues ABC, Inc., for breach of the widget dealership contract. Judge Smith presides over the case and the trial. ABC, Inc., unaware of Judge Smith's prior relationship with XYZ Company, does not exercise its right to substitute him out of the case.

¶59    According to the majority, it is perfectly proper for Judge Smith to sit on *XYZ Company v. ABC, Inc.,* and, presumably, render a judgment in favor of his former client, because "the plain language of § 3-1-803(3), MCA, does not prohibit a judge from presiding in an action or proceeding unless the representation occurred *in the action or proceeding*." *See* ¶ 19 herein (emphasis added). Judge Smith is within the perceived statutory loophole because he was never counsel of record for XYZ Company in its suit against ABC, Inc. He just gave XYZ Company advice that may well have prompted or facilitated the suit—advice, coincidentally, in which he has a vested interest.

---

[1]And which, as Justice Warner points out, can be otherwise punished.

¶60    The majority exalts form over substance. Section 1-3-219, MCA. Section 3-1-803(3), MCA, provides that a judge "must not sit or act in any action or proceeding . . . [w]hen he has been attorney or counsel in the action or proceeding for any party . . . ." In fixating on a portion of the statutory language, the majority completely discounts the obvious intendment of the statue—that being to preclude judges from sitting on cases in which they have had an attorney-client relationship with one of the parties to a dispute which eventually comes before the judge.

¶61    It is a distinction without a difference that Judge Smith can sit on *XYZ Company v. ABC, Inc.*, in the scenario described above (and the one in the case at bar), but he cannot preside if he, as counsel for XYZ Company, had filed the suit against ABC, Inc., four weeks before he was appointed or elected to the bench. The evil addressed by the statute is precisely the same—in either case the judge had an attorney-client relationship with one of the parties to a particular dispute and now will be judging the merits of the same dispute. The point at which the dispute matured into an actual lawsuit is substantively meaningless.

¶62    Moreover, as Justice Warner states, Judge Gustafson's subjective awareness of her prior attorney-client relationship with Jane is beside the point. Taking Judge Gustafson at her word that she did not recall her prior attorney-client relationship with Jane (and I do take her at her word), that relationship having been brought to her attention—albeit belatedly and vexatiously—she was required under the statute to disqualify herself and appoint another judge to preside over further proceedings in the case.

¶63     Jane should be punished for her conduct.  However, in so doing, we should not set a precedent that makes a mockery of the appearance of fairness and propriety—the foundational supports of an independent judiciary.

¶64     The bench, bar and public should be shocked by this decision

¶65     I join in dissenting with Justice Warner.

/S/ JAMES C. NELSON