No. 02-737

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 36

IN RE THE MARRIAGE OF

MICHAEL GRENDE,

Petitioner and Appellant,

and

PATRICIA GRENDE,

Respondent and Respondent.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR 2001-453(B),
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Paul A. Sandry, Johnson, Berg, McEvoy & Bostock, PLLP,
Kalispell, Montana

For Respondent:

D. Mark Hash, Hash & O'Brien, PLLP, Kalispell, Montana

Submitted on Briefs:   December 11, 2003

Decided:   February 24, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Michael Grende (Michael) petitioned for dissolution of his marriage to Patricia Grende (Patricia) in the Eleventh Judicial District Court, Flathead County. Following a non-jury trial, the District Court divided the couple's property by a decree of dissolution and awarded maintenance to Patricia. Michael appeals from the District Court's property distribution and award of spousal maintenance. We affirm in part, reverse in part, and remand.

¶2     Michael presents five issues on appeal:

¶3     1. Did the District Court err in awarding Patricia the sum of $100,000.00, characterized as a portion of the increase in the value of Michael's pre-acquired ranch during the marriage?

¶4     2. Did the District Court err in awarding the sum of $11,050.00 to Patricia as an equitable distribution of the marital personal property?

¶5     3. Did the District Court err in awarding Patricia the sum of $1,650.00 based on what the court referenced as an agreement between Michael and Patricia concerning a rental property in Polson, Montana?

¶6     4. Did the District Court err in failing to provide Michael with a credit of $5,000.00 representing the amount ordered by the District Court to be paid by Michael to Patricia in connection with the court's interim division set forth in its January 10, 2002 Temporary Order?

¶7     5. Did the District Court err in awarding spousal maintenance to Patricia?

2

## FACTUAL AND PROCEDURAL BACKGROUND

¶8    Michael and Patricia were married on June 22, 1995, and resided together until January 2002. Both have had previous marriages. At the time of trial, Michael was 57 years of age, college educated, and in good physical and mental health. However, Patricia, 52 years of age and also college educated, suffered from arthritis and carpel tunnel syndrome, as well as anxiety and depression.

¶9    When Michael and Patricia began living together in 1994, Patricia was self-employed as a certified massage therapist, earning approximately $16,000 per year. Several years after marrying Michael, Patricia began experiencing pain as a result of arthritis and carpel tunnel syndrome. In January 2000, Patricia terminated her work as a certified massage therapist due to her painful physical condition and has not been employed since that time.

¶10   Prior to marrying Patricia, Michael had worked for the Montana Power and Western Energy Company for approximately twenty-eight years. In 1988, seven years before the marriage, he inherited a Montana ranch consisting of roughly 1,937 acres, which included a home and other improvements. In 1993, Michael terminated his employment with Montana Power to attend to the ranch. Since 1995, Michael has engaged in a combination of ranch work and real estate sales.

¶11   Throughout their marriage, Michael and Patricia took great care to keep their premarital property separate. They held no joint checking or savings accounts, and did not commingle their premarital investments. However, the parties generated little income during their marriage and, as a result, the record reflects a significant liquidation of assets

throughout this time. Michael, in particular, expended a considerable portion of his premarital assets to sustain the parties' standard of living, which included driving nice cars, dressing well, taking vacations each year, and frequently dining out. Despite this, the value of Michael's premarital assets was not decreased overall, because, during the years 1995 to 2000, his stock investments increased significantly in value as a result of market forces.

¶12 Patricia also expended a portion of the income she derived from her premarital investments to pay marital expenses and purchase marital assets, albeit not to the same extent as Michael. For the two years preceding trial, Patricia's only source of income consisted of a $100.00 monthly interest payment on a promissory note, which is automatically reinvested with the note, and $820.00 per month from the sale of her premarital residence. Notwithstanding Patricia's minimal income, at the time of trial, the approximate total of Patricia's premarital investments greatly exceeded Michael's, whose primary investment – the ranch – was as income-consuming as it was income-producing.

¶13 During their marriage, Michael and Patricia primarily resided on the ranch. While Patricia was responsible for cleaning and day-to-day maintenance of the household, she also utilized hired housekeepers to clean the family home. Occasionally, Patricia assisted in ranch operations, such as checking on the cows, fences, and gates; filling water troughs; feeding the horses, and other activities. However, her contributions were minimal. At the time of Michael and Patricia's marriage, the ranch was valued at approximately $1.6 million. By the time of trial, its fair market value had increased to $2.2 million. While Michael had made a number of improvements to the ranch which contributed to its appreciation, and had

4

done so using his separate premarital assets, testimony received at trial suggested this increase in value was primarily due to market and inflationary factors.

¶14　Several months after filing his petition for dissolution of marriage, Michael brought a motion seeking to exclude Patricia from the marital residence. Patricia agreed to this physical separation, provided she received sufficient maintenance from Michael to support her separate housing and living expenses. Accordingly, Patricia brought a cross-motion seeking temporary spousal support in the amount of $1,500.00 per month. She additionally requested attorney fees and costs.

¶15　On January 10, 2002, the District Court issued a temporary order granting Michael's request to exclude Patricia from the family home. Pursuant to the court's order, Patricia was to be allowed to reside rent-free at the ranch's rental property and Michael was to arrange for her moving expenses. The court additionally ordered Michael to allow Patricia to use his 1989 Ford pickup, or alternatively, pay her the sum of $5,000.00, which Patricia would put towards the purchase of a suitable four-wheel drive vehicle. However, the court denied Patricia's request for temporary spousal maintenance, concluding that she had sufficient premarital property to meet her needs pending trial.

¶16　Shortly after moving into the ranch's rental property, however, Patricia began experiencing difficulties living there due to its isolated location and overall impracticability. In particular, Patricia had difficulty accessing the property without a four-wheel drive vehicle and Michael had failed to deliver the 1989 Ford pickup as previously ordered by the court. The parties eventually resolved this situation in favor of moving Patricia into a rental

5

property located in Polson, Montana, and Michael paid Patricia $5000.00 in lieu of providing her the pickup. Patricia asserts that Michael additionally agreed to pay her rental expenses for the Polson residence in the amount of $550.00 per month, which he subsequently failed to pay.

¶17 On August 27, 2002, following a non-jury trial, the District Court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution, dissolving the parties' marriage, apportioning their marital property between them, and ordering Michael to pay Patricia $100,000.00 over the course of three years, which the court found reflected the increase in value of the ranch during the marriage due to Patricia's non-monetary contributions. The court additionally awarded Patricia maintenance in the amount of $750.00 per month for a period of one year, beginning April 2002. The court ordered that, following the one-year maintenance period, Michael would thereafter continue making $750.00 monthly payments to be applied to the $100,000.00 awarded to Patricia from Michael's ranch, until the award was satisfied. From this order, Michael appeals.

**STANDARD OF REVIEW**

¶18 We review the division of marital property by a district court to determine whether the findings upon which the court relied are clearly erroneous. *In re Marriage of Engen,* 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *In re Marriage of Steinbeisser*, 2002 MT 309, ¶ 17, 313 Mont. 74, ¶ 17, 60 P.3d

6

441, ¶ 17. "If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion." *Engen,* ¶ 26. The test for abuse of discretion in a dissolution proceeding is "whether the district court acted arbitrarily without employment of conscientious judgment" or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *Engen,* ¶ 26.

¶19 Finally, the standard of review of a district court's conclusions of law is whether the conclusions are correct. *In re Marriage of Pfeifer*, 1998 MT 228, ¶ 9, 291 Mont. 23, ¶ 9, 965 P.2d 895, ¶ 9.

## DISCUSSION

¶20 **Did the District Court err in awarding Patricia the sum of $100,000.00, characterized as a portion of the increase in the value of Michael's pre-acquired ranch during the marriage?**

¶21 Michael concedes the ranch increased in value during the marriage. However, he argues that the appreciation of this premarital asset was due strictly to market and inflationary forces, and was not the product of Patricia's monetary or non-monetary contributions. Michael argues that, under Montana case law, it is well established that the non-acquiring spouse is only entitled to an equitable share of the appreciated or preserved value of the premarital property which is attributable to his or her efforts, and is not entitled to share in the appreciation merely due to his or her status as a homemaker. We agree.

7

¶22 Section 40-4-202, MCA (2001), controls the division of pre-acquired property in a proceeding for dissolution, and provides in pertinent part:

> (1) [T]he court . . . shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . *In dividing property acquired prior to the marriage; . . . the increased value of property acquired prior to the marriage; . . . the court shall consider those contributions of the other spouse to the marriage, including:*
> *(a) the nonmonetary contribution of a homemaker;*
>
> *(b) the extent to which such contributions have facilitated the maintenance of this property; and*
>
> *(c) whether or not the property division serves as an alternative to maintenance arrangements.*

(Emphasis added.) Thus, as provided by statute, a non-acquiring spouse is entitled to an equitable share of "only the appreciated or preserved value [of premarital property] *which is attributable to his or her efforts.*" *Steinbeisser*, ¶ 47 (emphasis added). "A court cannot distribute to the non-acquiring spouse property acquired prior to the marriage or acquired by gift, bequest, devise, or descent when there is no evidence that the spouse made any contribution to those assets in any form." *In re Marriage of Smith* (1994), 264 Mont. 306, 312, 871 P.2d 884, 888. Furthermore, "a non-acquiring spouse is not entitled to a share of the increase in premarital property when the property's appreciation is due simply to market factors." *Steinbeisser*, ¶ 47; *see also In re Marriage of Bradshaw* (1995), 270 Mont. 222, 891 P.2d 506 (district court erred in awarding $6,000.00 of husband's premarital house to wife where wife had not made "any substantial contributions" to the house, which had increased in value because of inflation).

¶23    Here, the District Court received testimony at trial that the appreciation in the value of the ranch was primarily the result of market and inflationary factors, in that sales prices for such property in the area had increased significantly in the years 1994 to 2001.  While improvements made to the property during the marriage caused a negligible increase in the value of the ranch, it should be noted that such improvements were accomplished by Michael alone at his personal expense.  Furthermore, the District Court specifically found that Patricia's non-monetary contributions were minimal and infrequent, and not as significant as she suggested at trial.  Because there is no evidence that Patricia's *de minimis* contributions facilitated the appreciation of this premarital asset, Patricia is not entitled to a share in the increase in the value of the ranch.  We therefore reverse that portion of the decree awarding Patricia the sum of $100,000.00.

¶24    **Did the District Court err in awarding the sum of $11,050.00 to Patricia as an equitable distribution of the marital personal property?**

¶25    At trial, the District Court received testimony that some of the personal items being allocated among the parties had been acquired by Michael prior to the marriage, and several others purchased by either Michael or Patricia during the marriage with premarital funds.  However, because the parties presented no evidence concerning the manner in which these items were acquired, the court was unable to determine whether many of these items were separate or marital property.  Accordingly, the court awarded Michael the bulk of the personal property and ordered him to pay Patricia the sum of $11,050.00, or one-half the difference in value between the property awarded to each of the parties.  Michael contends

9

that the District Court erred in awarding Patricia this sum of money because the items allocated to him were his premarital property or acquired with premarital funds, and therefore, should have been awarded to him free of any obligation to Patricia.

¶26    Patricia responds arguing that, in making an equitable apportionment of the marital estate, the District Court is not required or permitted to speculate as to the marital or premarital nature of the property. Because Michael failed to establish the premarital nature of such property, Patricia contends the District Court was correct in awarding her one-half the value of the parties' personal property.

¶27    In non-jury trials, such as this one, the district court judge is charged with listening to and weighing the evidence presented. The judge must determine the credibility of each witness based upon their demeanor, temperament, attitude, and candor, among other things. For these reasons, this Court defers to the district court's discretion in matters of evidence weight and credibility, particularly when conflicting evidence is presented. *See Albrecht v. Albrecht*, 2002 MT 227, ¶ 47, 311 Mont. 412, ¶ 47, 56 P.3d 339, ¶ 47; *In re A.F.,* 2003 MT 254, ¶ 24, 317 Mont. 367, ¶ 24, 77 P.3d 266, ¶ 24; *Koeppen v. Bolich*, 2003 MT 313, ¶ 42, 318 Mont. 240, ¶ 42, 79 P.3d 1100, ¶ 42.

¶28    In this case, the only evidence presented to the District Court concerning the parties' tangible personal property was a list prepared by Patricia. At trial, Patricia conceded that several of the items listed were owned by Michael prior to the marriage, including a Yamaha generator, electric fence, and satellite dish and receiver, and the District Court distributed

each of these items to Michael with a zero value. Michael further identified a grain silo as being purchased exclusively with his premarital funds, a $10,000 value, and the District Court allocated this item to Michael with a zero value. Additionally, since neither party disputed the other's contention that their vehicles were purchased and maintained with separate premarital funds, the District Court awarded Michael and Patricia their respective vehicles, assigning a zero value to each of them. However, to the extent the parties disagreed on the characterization of their personal property, the District Court found it fair and equitable to divide the property equally, as neither party presented any receipts or other indicia of purchase, and the court found it virtually impossible to resolve disagreements as to how and when such property was acquired.

¶29    We will not hold the District Court in error for failing to take into consideration evidence that was never presented. Given the lack of evidence presented by the parties, we hold the District Court's findings of fact and conclusions of law are not clearly erroneous, and that the court did not abuse its discretion in its distribution of property and order requiring Michael to pay Patricia the sum of $11,050.00.

¶30    **Did the District Court err in awarding Patricia the sum of $1,650.00 based on what the court referenced as an agreement between Michael and Patricia concerning a rental property in Polson, Montana?**

¶31    Although Michael raised this as an issue in his opening brief, he failed to bolster any argument or authority in support. Rule 23(a)(4), M.R.App.P. (2001), requires that an appellant provide an argument that contains "the contentions of the appellant with respect

11

to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on." This Court has repeatedly held that "we will not consider unsupported issues or arguments." *In re Custody of Krause*, 2001 MT 37, ¶ 32, 304 Mont. 202, ¶ 32, 19 P.3d 811, ¶ 32. Moreover, it is "not this Court's obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal." *In re B.P.*, 2001 MT 219, ¶ 41, 306 Mont. 430, ¶ 41, 35 P.3d 291, ¶ 41. As a result of Michael's failure to brief this matter in compliance with Rule 23(a)(4), M.R.App.P., we decline to address this issue.

¶32 **Did the District Court err in failing to provide Michael with a credit of $5,000.00 representing the amount ordered by the District Court to be paid by Michael to Patricia in connection with the court's interim division set forth in its January 10, 2002 Temporary Order?**

¶33 Pursuant to the District Court's January 10, 2002 Temporary Order, Michael paid Patricia the sum of $5,000.00, in lieu of providing her with the 1989 Ford pickup. On appeal, Michael argues that he should have been credited for this payment to Patricia in the final decree, and that the District Court erred in failing to do so.

¶34 However, Michael raises this as an issue for the first time on appeal. It is well established that this Court will not review an issue that was not raised in the district court. *In re Marriage of Schnell* (1995), 273 Mont. 466, 472, 905 P.2d 144, 148; *Matter of Adoption of T.G.K.* (1981), 193 Mont. 139, 144, 630 P.2d 740, 743. Accordingly, we summarily decline to address the merits of Michael's argument on appeal.

12

¶35 **Did the District Court err in awarding spousal maintenance to Patricia?**

¶36 Michael contends the District Court erred in awarding maintenance to Patricia, arguing that such an award is inconsistent with the court's January 10, 2002 Temporary Order denying Patricia's request for maintenance on the basis that she had sufficient premarital assets to provide for her reasonable needs pending trial. Michael further challenges the maintenance award as incongruent with the District Court's findings of fact and conclusions of law, in which the court found that Patricia's assets exceeded Michael's considerably.

¶37 We review a district court's award of maintenance to determine if the court's findings are clearly erroneous. *In re Marriage of Bee*, 2002 MT 49, ¶ 27, 309 Mont. 34, ¶ 27, 43 P.3d 903, ¶ 27. A district court may award maintenance after the marital property has been equitably divided pursuant to § 40-4-202, MCA, and the court has properly applied the criteria of § 40-4-203, MCA. *Bee*, ¶ 27. Section 40-4-203, MCA, provides:

> (1) In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
> (a) lacks sufficient property to provide for his reasonable needs; and
> (b) is unable to support himself through appropriate employment . . .
> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . .
> (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
> (c) the standard of living established during the marriage;
> (d) the duration of the marriage;

13

(e) the age and physical and emotional condition of the spouse seeking maintenance; and

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

¶38 Although a district court must consider each of these factors listed in § 40-4-203, MCA, it is not necessary that the court make specific findings of fact regarding each factor, so long as this Court can determine that the trial judge considered each factor. *In re Marriage of Childers* (1985), 216 Mont. 125, 127, 700 P.2d 594, 596. Based on our review of the record, we conclude there was substantial evidence to support a maintenance award. The District Court recognized that Patricia was 52 years of age and had several health problems, which greatly curtailed her prospects for obtaining employment. As a result of her physical and emotional condition, the court found Patricia would be unable to meet her monthly living expenses, even with the anticipated procurement of part-time employment. On the other hand, Michael's health was good, and he was able to generate sufficient income from his real estate sales to assist Patricia in meeting her monthly needs and expenses. The court additionally considered the duration of the marriage and the standard of living attained during the marriage, as well as the parties' monthly needs and living expenses.

¶39 "We have recognized that district courts face a considerable task in determining a maintenance award. . . . [I]n the final analysis, it is not a question of whether we could be persuaded to reach a different conclusion after considering the same evidence. Rather, the test is whether the district court had adequate evidence to support its conclusions." *In re Marriage of Haines*, 2002 MT 182, ¶ 23, 311 Mont. 70, ¶ 23, 53 P.3d 378, ¶ 23. Here, we

hold that the District Court's findings are supported by substantial evidence and are not clearly erroneous.

¶40    Affirmed in part, reversed in part, and remanded.


/S/ JIM RICE

We concur:

/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JAMES C. NELSON

/S/ THOMAS M. McKITTRICK
Honorable Thomas M. McKittrick, District
Judge, sitting in place of Chief Justice Gray


District Judge Randal I. Spaulding dissenting in part and concurring in part.

¶41    I would affirm the District Court's award of $100,000 to Patricia and, therefore, dissent to the majority opinion's disposition of Issue 1.  On all other issues, I concur with the majority opinion.


/S/ RANDAL I. SPAULDING
Honorable Randal I. Spaulding, District
Judge, sitting in place of Justice Leaphart