CHIEF JUSTICE GRAY
delivered the Opinion of the Court.
¶1 Jane L. Markegard (Jane) appeals from the order entered by the Thirteenth Judicial District Court, Yellowstone County, denying her motion for relief from judgment and from the underlying judgment in this dissolution proceeding. We affirm.
¶2 The restated issues on appeal are:
¶3 1. Did the District Court abuse its discretion by denying Jane’s second post-trial motion, in which Jane first requested recusal or disqualification of the presiding judge due to Jane’s pre-petition meeting with the judge in her prior capacity as an attorney?
¶4 2. Did the District Court abuse its discretion in distributing the marital estate?
*189 BACKGROUND
¶5 In August of 2003, Rodney Pierce Markegard (Rod) petitioned for dissolution of his marriage to Jane. Judge Diane G. Barz originally presided over the case, and Judge Ingrid Gustafson took her place in January of 2004. The case proceeded to trial on November 10, 2004, and the District Court entered a decree of dissolution on November 16, 2004. The court characterized a business as Rod’s premarital asset and traced all but $23,179 of the proceeds from the sale of the home in which Rod and Jane lived to Rod’s premarital assets and Rod’s inheritance. In distributing the marital assets and debts, the court awarded Rod the real property where the business was located, along with certain associated debts.
¶6 Pursuant to Rules 59(a) and 60(b)(3), M.R.Civ.P., Jane moved to reopen the hearing so she could submit additional evidence on a matter relating to the property distribution. The District Court denied the motion on December 10, 2004, and Rod served Jane with notice of entry of judgment.
¶7 On January 26, 2005, Jane moved for reconsideration of the previously denied motion to reopen the hearing or, alternatively, for relief from judgment pursuant to Rules 60(b)(2) and 60(b)(6), M.R.Civ.P. She did not argue that the District Court had improperly denied her motion to reopen the hearing, but asked Judge Gustafson to vacate the judgment, grant a new trial and recuse herself based on “past representation and legal advise [sic] given to [Jane]” by Judge Gustafson before she became a judge.
¶8 In support of her Rule 60(b) motion, Jane filed her affidavit stating she had told her counsel on January 21, 2005, that, before Judge Gustafson assumed the bench, Jane had consulted with her for “somewhere between one and two hours,” obtained her “opinion as to the divorce expectations,” and paid for her services. Jane further averred that she and attorney Gustafson discussed “her marital situation, her marital strategy and other confidential information concerning her relationship with [Rod].” She stated she did not previously tell her counsel about the consultation-“even though [she] recognized the Judge at the time of the hearing on the dissolution proceedings” in November of 2004-because she “was intimidated by the proceedings, and did not know the appropriate information to pass on to her counsel.” She stated “third parties” encouraged her to'report the prior contact. She also stated she believed the knowledge gleaned during the consultation “may have influenced the Court, or at a minimum, your affiant’s confidence has been diminished that your *190 Honor could fairly rule on the marital issues due tho [sic] this past representation.”
¶9 The District Court denied Jane’s motion. In the order, Judge Gustafson stated she had contacted her former law firm and learned she had met for 1.3 hours with Jane on July 28, 2003, Jane had paid $108 for the consultation, and Jane did not retain Gustafson or the firm. Judge Gustafson further related that, to avoid the appearance of impropriety in other cases, she had recused herself immediately upon learning she had represented a party or met with a prospective litigant in her capacity as an attorney. In addition, Judge Gustafson stated that, other than her post-judgment review of the firm’s records, she had “no recollection, whatsoever, of ever consulting with [Jane],” she did not remember the subject matter of the consultation-although she presumed it likely was related to dissolution issues-and she had not recognized Jane or the circumstances of the case during the proceedings. The judge explained she “would not hesitate to set aside the Judgment entered herein if [she] believed that her encounter with [Jane] ... in any way influenced, biased or prejudiced the Court’s Findings of Fact, Conclusions of Law and Decree of Dissolution. Such is not the case.” Judge Gustafson suggested that, if the decree of dissolution had adopted Jane’s proposed property distribution, Jane likely would not have reported the consultation and “would have been content to, in essence, reap the benefit of any prior contact[.]” The judge opined Jane was “merely seeking another bite at the apple,” expressed concern about Jane’s “apparent game playing” and stated she was denying J ane’s motion “to protect the integrity of the Judiciary ... and to avoid the blatant manipulation of this Court[.]”
¶10 Jane appeals. We set forth additional facts in the discussion below.
STANDARD OF REVIEW
¶11 We review a district court’s denial of a Rule 60(b), M.R.Civ.P., motion for abuse of discretion. See In re P.D.L., 2004 MT 346, ¶ 8, 324 Mont. 327, ¶ 8, 102 P.3d 1225, ¶ 8 (citation omitted). We review a district court’s distribution of property in a marriage dissolution case to determine whether the findings of fact are clearly erroneous; if the findings are not clearly erroneous, we affirm unless the district court abused its discretion. See In re Marriage of Grende, 2004 MT 36, ¶ 18, 320 Mont. 38, ¶ 18, 85 P.3d 788, ¶ 18 (citations omitted).
*191 DISCUSSION
¶12 1. Did the District Court abuse its discretion by denying Jane’s second post-trial motion, in which Jane first requested recusal or disqualification of the presiding judge due to Jane’s pre-petition meeting with the judge in her prior capacity as an attorney ?
¶13 On appeal, Jane barely acknowledges that the procedural posture of this appeal involves her challenge to the District Court’s denial of her Rule 60(b), M.R.Civ.P., motion for relief from judgment. Jane’s argument is that Judge Gustafson was disqualified under
§ 3-1-803(3), MCA, or was required to recuse herself after judgment to avoid “the appearance of impropriety.” In this regard, Jane mistakenly sets forth the “correctness” standard of review-generally applicable to conclusions of law-rather than the “abuse of discretion” standard applicable to the denial of her motion for relief from judgment. We begin with Rule 60(b), M.R.Civ.P., because Jane submitted her post-judgment motion-and the District Court decided it-under that rule.
¶14 Rule 60(b), M.R.Civ.P., provides, in pertinent part, that
[o]n motion and upon such terms as are just, the court may relieve a party or a party’s legal representative from a final judgment, order, or proceeding for the following reasons: ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);... or (6) any other reason justifying relief from the operation of the judgment.
The only possible reference in Jane’s appellate briefs to the “newly discovered evidence” requirement of Rule 60(b)(2), M.R.Civ.P., is the statement that her motion “was based upon the discovery that the trial Court had represented [Jane] prior to taking the bench.” She does not argue that the pre-petition consultation was “evidence,” nor does she assert-in light of her affidavit stating she was aware of the consultation at the time of trial-the consultation was “newly discovered” or could not have been discovered by her “due diligence.” Therefore, we conclude Jane has not established the basis for relief from judgment set forth in Rule 60(b)(2), M.R.Civ.P.
¶15 With respect to the Rule 60(b)(6), M.R.Civ.P., “any other reason justifying relief’ basis, Jane first advances § 3-1-803(3), MCA, which provides, in part, that
[a]ny justice, judge, justice of the peace, municipal court judge or city court judge must not sit or act in any action or proceeding:
3. When he has been attorney or counsel in the action or proceeding for any party[.]
*192 Section 3-1-803(3), MCA, is a Supreme Court Rule codified in the Montana Code Annotated for the benefit of code users. Sec. 2, Ch. 1, L. 1979. In a section of her District Court brief entitled “law,” Jane quoted § 3-1-803, MCA, in its entirety but provided no analysis, authorities, or application relating to any subsection of the rule. The District Court did not address § 3-1-803(3), MCA, in its order. Moreover, although the District Court did not expressly refer to the “upon such terms as are just” portion of Rule 60(b), M.R.Civ.P., its order-including the statements set forth above-clearly indicates the court did not believe it would be just to grant Jane relief from judgment.
¶16 A Rule 60(b)(6), M.R.Civ.P., motion requires a showing that “ ‘something prevented a full presentation of the cause or an accurate determination on the merits and that for reasons offairness and equity redress is justified.’ ” In re Marriage of Schoenthal, 2005 MT 24, ¶ 35, 326 Mont. 15, ¶ 35, 106 P.3d 1162, ¶ 35 (citation omitted) (emphasis added). The record before us is clear that, at the time of the November 10, 2004 hearing, Jane was aware of having consulted with attorney Gustafson and Judge Gustafson was not. Moreover, Jane does not challenge the District Court’s statement that Jane knew of the prepetition consultation and did not advise her counsel or the court for the entire year of 2004. Jane could have requested recusal pursuant to § 3-1-803(3), MCA, at any time after she became aware that she had consulted with the presiding judge, but waited until her second post-trial motion to do so. We conclude the District Court properly considered the fairness and equity factors of the case and did not abuse its discretion in denying Jane’s Rule 60(b), M.R.Civ.P., motion on those grounds.
¶17 We turn next to Jane’s arguments on appeal regarding § 3-1-803(3), MCA. She contends that § 3-1-803(3), MCA, is mandatory, clear, and concise, and “the clear facts are that Judge Gustafson represented Jane Markegard in divorce matters. The Judiciary has a much higher duty to disqualify itself to comply with statutory and case law then [sic] the lay public.” She asserts § 3-1-803(3), MCA, does not contain a time limit, an exception for a judge’s failure to recall counseling a party or prospective litigant, or a provision for considering whether a party is seeking another bite at the apple.
¶18 Section 3-1-803(3), MCA, prohibits a judge from presiding in an action or proceeding “[w]hen he has been attorney or counsel in the action or proceeding for any party[.]” Although § 3-1-803(3), MCA, is a codified Court rule rather than a legislatively-initiated statute, the first step in construing intent is to examine the plain language of the *193 writing and, if the language is clear and unambiguous, we may not proceed to apply any other means of interpretation. See, e.g., In re Lewis, 2004 MT 160, ¶ 15, 322 Mont. 13, ¶ 15, 92 P.3d 1218, ¶ 15 (citation omitted).
¶19 It is undisputed that Judge Gustafson did not act as “attorney or counsel in the action or proceeding” at issue here. Jane does not challenge Judge Gustafson’s statement that the consultation occurred in July of 2003, before Rod filed his dissolution petition in August of 2003. Judges routinely-and properly-recuse themselves sua sponte from cases involving parties or persons they recall having represented at some previous time; the record in the present case reflects that Judge Gustafson follows this practice. We conclude, however, that the plain language of § 3-1-803(3), MCA, does not prohibit a judge from presiding in an action or proceeding unless the representation occurred in the action or proceeding. Of course, we may amend § 3-1-803(3), MCA, at any time, as we recently amended § 3-1-803(2), MCA, with respect to the disqualification of judges based on relationships by consanguinity or affinity. See Montana Supreme Court Order dated Dec. 5, 2000, entitled “In re Modification of the Rule on Disqualification of Judges.” Currently, however, we are bound by the language we have chosen.
¶20 Our jurisprudence on judicial disqualification, under current rules or their predecessors, is not extensive. We have decided a number of cases involving § 3-1-805, MCA, and its predecessors, which relate to a party’s motion to disqualify a judge based on an allegation of personal bias or prejudice. See, e.g., Dambrowski v. Champion Intl. Corp., 2000 MT 149, ¶¶ 48-51, 300 Mont. 76, ¶¶ 48-51, 3 P.3d 617, ¶¶ 48-51; State v. Duncan (1981), 191 Mont. 253, 255, 623 P.2d 953, 954. Jane does not rely on § 3-1-805, MCA, which requires the filing of an affidavit alleging judicial bias more than 30 days before the date set for hearing or trial. Jane did not timely file such an affidavit and, as a result, our decisions addressing § 3-1-805, MCA, and its predecessors are inapplicable.
¶21 With the exception of Shultz v. Hooks (1994), 263 Mont. 234, 867 P.2d 1110, our cases addressing § 3-1-803(3), MCA, and its predecessors are over one hundred years old. It is appropriate to address Shultz here, even though neither party has raised it, because it is our most recent authority on § 3-1-803(3), MCA. In Shultz, a district court awarded default judgment against an attorney in a legal malpractice case which centered on the attorney’s representation of a client in an action against the client’s father regarding the father’s guardianship of the client and management of a personal injury *194 settlement. The court also awarded the plaintiff compensatory damages, punitive damages and costs. Shultz, 263 Mont. at 235, 867 P.2d at 1111. After three writs of execution on the default judgment, the attorney moved for relief from judgment pursuant to Rule 60(b), M.R.Civ.P., based on an assertion that the presiding judge had once represented the client. Shultz, 263 Mont. at 235-36, 867 P.2d at 1111-12. Pursuant to Rule 60(c), M.R.Civ.P., the motion was deemed denied when the district court did not timely rule on it. Shultz, 263 Mont. at 235, 867 P.2d at 1111.
¶22 On appeal, we observed the presiding judge had represented the client approximately fifteen years before the malpractice action commenced and, during that representation, he had attempted to locate information about the father’s guardianship of the client and a related accounting. We also noted the subsequent attorney’s representation of the client in the guardianship matter was “the substance of the malpractice charges[.]” Shultz, 263 Mont. at 236, 867 P.2d at 1112. We then recited § 3-1-803(3), MCA, and concluded the judge was required to disqualify himself, stating:
[t]he malpractice action here is a direct result of [the attorney’s] representation of [the client] in the action for a guardianship accounting-an action in which [the judge] also represented [the client]. Although we conclude that [the judge] was required by § 3-1-803, MCA, to disqualify himself from presiding over the subsequent malpractice action against [the attorney], we emphasize that there is absolutely nothing in the record to indicate any wrongdoing or unethical conduct on the part of [the judge]. [The judge] represented [the client] for a short period of time beginning nearly eighteen years ago and his representation did not progress to the point of filing an action against [the client’s] guardian, but rather, merely involved preliminary investigation.
A judge is not prevented from presiding over matters which involve his or her prior clients if the action involves another matter. Although this malpractice action is technically a separate action from the underlying suit against [the client’s] father relating to the guardianship, it arises from the legal representation in that lawsuit, albeit the representation by [the attorney] and not that of [the judge].
We reversed and remanded. Shultz, 263 Mont. at 237, 867 P.2d at 1112.
¶23 As is often true with precedent, Shultz could be distinguished from the present case. Unlike the attorney’s assertion in Shultz *195 regarding the judge’s prior representation of an opposing party, Jane has raised her own interaction with Judge Gustafson. Moreover, we did not address in Shultz whether the defendant attorney or the presiding judge knew of the prior representation before or immediately after the default judgment, while the record here is clear and undisputed that Jane knew-and Judge Gustafson did not know-about their pre-petition consultation. In addition, we note our remand in Shultz for substitution of another judge to rule on the merits of the attorney’s motion for relief from judgment-the very issue we had already decided in the attorney’s favor-was inappropriate. See Shultz, 263 Mont. at 237, 867 P.2d at 1112. Instead, having concluded the attorney’s motion was improperly deemed denied, we should have ordered substitution of another judge to preside over the underlying malpractice action.
¶24 Most importantly, however, our interpretation of § 3-1-803(3), MCA, in Shultz went beyond the plain language of the rule. Section 3-1-803(3), MCA, states a judge is disqualified when he or she “has been attorney or counsel in the action or proceeding for any party.” Having recognized in Shultz that the malpractice suit was a separate action from the guardianship-related matter and the judge had not acted as attorney or counsel in any action or proceeding, we were obligated to conclude that § 3-1-803(3), MCA, did not require disqualification. We did not do so. To the extent Shultz states § 3-1-803(3), MCA, precludes a judge from sitting on a case in which he or she has rendered services for a person before an action is filed or has acted as a party’s attorney in a separate related case, we overrule it. We conclude § 3-1-803(3), MCA, does not require disqualification of Judge Gustafson due to the pre-petition consultation with Jane.
¶25 Next, relying on Washington v. Montana Min. Properties (1990), 243 Mont. 509, 795 P.2d 460, and In. re Marriage of Miller (1989), 239 Mont. 12, 778 P.2d 888, Jane contends Judge Gustafson should have recused herself to avoid the appearance of impropriety. We disagree.
¶26 In Washington, this Court issued a writ of supervisory control to remove a judge from a case. There, the judge’s social interaction at a football game with attorneys from a party’s law firm during the opposing party’s pending disqualification motion and his son’s internship at the law firm did not, by themselves, require disqualification. However, those facts-combined with the judge’s admission of testimony from one of the law firm’s attorneys at an injunction hearing, in violation of Rule 3.7(a) of the Montana Rules of Professional Conduct, and a newspaper article about the case and the football game interaction-had “snowballed to create an appearance of *196 impropriety.” Washington, 243 Mont. at 515-16, 795 P.2d at 464. Thus, Washington concerned a party’s contentions about a judge’s multiple interactions with the opposing party-of which the judge was almost certainly aware-which “snowballed” to create an appearance of impropriety leading to the issuance of a writ of supervisory control. Jane’s Rule 60(b), M.R.Civ.P., motion regarding her own single prepetition consultation with attorney Gustafson-which Judge Gustafson did not remember-bears no resemblance to the facts in Washington. Therefore, Washington does not support Jane’s position.
¶27 In Miller, we first concluded a district court’s findings and conclusions in a dissolution proceeding contained sufficient errors to warrant reversal. Miller, 239 Mont. at 15-17, 778 P.2d at 890-91. We then determined it was not necessary to rule on the "wife’s contention, as argued in her post-trial motion, that the presiding judge should have disqualified himself due to certain writings published in a local newspaper, including the judge’s letter to the editor. However, we directed that, to eliminate any question of impropriety or impartiality on remand, the proceeding would be assigned to a different district judge. Miller, 239 Mont. at 17-19, 778 P.2d at 891-92.
¶28 Having expressly declined to rule on the disqualification issue in Miller, that case has no bearing on Jane’s argument that she is entitled to post-judgment disqualification here. Further, unlike Miller, we need not determine here whether assignment of a different judge for future proceedings is appropriate pursuant to the “appearance of impropriety” standard because, as discussed below, we are not reversing and remanding this case for any error.
¶29 Washington and Miller are the only authorities Jane advances for her position that she is entitled to relief from judgment based on an “appearance of impropriety.” In addition to not supporting Jane’s position with respect to establishing an “appearance of impropriety,” those cases do not address the additional inquiry required in the present case by Rule 60(b), M.R.Civ.P., as to the fairness, equity or “just” considerations involved in deciding a motion for relief from judgment, as discussed above.
¶30 The appellant bears the burden of establishing error. McDermott v. Carie, LLC, 2005 MT 293, ¶ 22, 329 Mont. 295, ¶ 22, 124 P.3d 168, ¶ 22 (citation omitted). Jane has not established an appearance of impropriety or entitlement to relief from judgment pursuant to Rule 60(b), M.R.Civ.P.
¶31 We hold the District Court did not abuse its discretion in denying Jane’s second post-trial motion, in which she first requested *197 recusal or disqualification of the judge due to the pre-petition consultation.
¶32 2. Did the District Court abuse its discretion in distributing the marital estate?
¶33 The District Court found, among other things, that (1) except for $23,179, the home sale proceeds were traceable to Rod’s premarital assets and inherited funds; (2) a business was Rod’s premarital asset; and (3) the real property where the business was located, which the court valued at $125,000, was a marital asset and certain debts on the real property were marital debts. In distributing the marital assets and debts, the court awarded the real property, as well as certain related marital debts, to Rod. After tallying the assets and debts allocated to each party, the court required Rod to make an “Equalization Payment” of $36,583 to Jane from an account containing proceeds from the sale of the home where Jane and Rod had lived. The total value awarded to each party was $42,583.
¶34 Jane asserts that, in distributing the marital estate, the District Court failed to consider the factors set forth in § 40-4-202, MCA. She makes no argument, however, regarding which factors the court allegedly failed to consider or the impact of those alleged failures. The appellant bears the burden of establishing error, and Rule 23(a)(4), M.R.App.P., requires an appellant to support arguments with citations to relevant authorities. Rolison v. Deaconess, 2005 MT 95, ¶ 20, 326 Mont. 491, ¶ 20, 111 P.3d 202, ¶ 20 (citation omitted). This Court has no obligation to formulate arguments on a party’s behalf; thus, we decline to address § 40-4-202, MCA, further. See In re Marriage of Grende, ¶ 31 (citation omitted).
¶35 Jane’s primary contention is that the District Court’s division of the martial property was not equitable. She points to testimony that the parties viewed the marriage as “traditional” and “commingled” their assets. Relying on Zell v. Zell (1977), 174 Mont. 216, 220, 570 P.2d 33, 35, and Biegalke v. Biegalke (1977), 172 Mont. 311, 316, 564 P.2d 987, 990, she argues she is entitled to one-half of the value of the home, business and business real property based on her work for the business and her contributions as a homemaker and, further, she is not required to trace her contributions to the marital estate. In this respect, we note Jane’s observations on appeal that she received a salary for her work at the business and that she testified both she and Rod contributed to the upkeep of the home.
¶36 Zell and Biegalke involved the distribution of marital assets-that is, assets that were acquired or appreciated in value during the marriage. See Zell, 174 Mont. at 217, 570 P.2d at 33; Biegalke, 172 *198 Mont. at 313, 564 P.2d at 988. Here, the District Court made several findings supporting its determinations that the business was Rod’s premarital asset and most of the home sale proceeds were traceable to Rod’s premarital assets and his inheritance. With respect to the business, the court found Rod had operated the business as a sole proprietor from 1991 until the business’ incorporation in 2001, the “incorporation during the marriage does not alter the pre-marital nature of [Rod’s] business,” “[i]n essence, [Rod] is the business,” and “[t]he business entity itself did not appreciate during the marriage.” The District Court also found, among other things regarding the home, that Rod brought the value of his debt-free home into the marriage, both he and Jane contributed to improvements on that home-including $23,179 contributed by Jane and a $32,000 inheritance contributed by Rod-before they sold it, and a subsequently purchased home had not appreciated in value or resulted in a gain in equity through mortgage reduction during the marriage. With one exception, discussed below, Jane does not challenge these findings regarding the premarital nature of the business and most of the home sale proceeds. Thus, her reliance on Zell and Biegalke-which concern marital assets-is misplaced.
¶37 Jane does challenge the District Court’s determination that she contributed $23,179 to the improvements on the home Rod brought into the marriage. She argues Rod “acknowledged that [Jane] contended that she had contributed over $50,000.00 to the family but acknowledged only one payment of $26,000.00.” Rod’s acknowledgment of Jane’s contention is irrelevant. However, the record reflects conflicting testimony from Rod and Jane regarding the amount Jane received for the sale of her premarital home. During cross-examination of Jane, Rod’s counsel entered into evidenee-without objection-a settlement statement for the sale of Jane’s premarital home reflecting a payment of $23,179. Jane insisted she had received a second payment, but admitted she could not provide any documentation to support her testimony or to demonstrate Rod had not been truthful. In this regard, we note Jane does not appeal from the District Court’s denial of her first post-trial motion, in which she requested that the court reopen the hearing to receive additional evidence of the alleged second payment.
¶38 A finding is clearly erroneous if it is not supported by substantial credible evidence, the district court misapprehended the effect of the evidence or, after reviewing the record, this Court is convinced the district court made a mistake. See In re Marriage of Crilly, 2005 MT 311, ¶ 10, 329 Mont. 479, ¶ 10, 124 P.3d 1151, ¶ 10 (citation omitted). *199 Credibility determinations are within the province of the finder of fact — here, the District Court. See In re Marriage of Gerhart, 2003 MT 292, ¶ 21, 318 Mont. 94, ¶ 21, 78 P.3d 1219, ¶ 21 (citations omitted). We conclude, based on the settlement statement and testimony at trial, that the District Court’s determination that Jane contributed $23,179 to the home was supported by substantial credible evidence and was not otherwise clearly erroneous.
¶39 We conclude the District Court did not err in finding the business was Rod’s premarital asset and the net proceeds of the home, except for $23,179, were traceable to Rod’s premarital assets and his inheritance. In addition, we do not discern any abuse of discretion in those regards.
¶40 With respect to the real property where the business was located, Jane asserts the District Court should have “subtracted” two debts associated with purchasing the property and then divided the remaining equity equally because all payments made on the real property were made by the parties during the marriage. The District Court found the real property was acquired during the marriage and, therefore, was a marital asset which it valued at $125,000. The court found Rod and Jane purchased the property for $65,000 and debts related to the purchase-$20,000 owed to Rod’s father and $39,314.25 owed to a bank-were marital debts. The court allocated the real property and the specified marital debts to Rod as part of the marital estate and, as mentioned above, ordered Rod to make an “Equalization Payment” of $36,583 to Jane from the account containing the home sale proceeds.
¶41 Jane offers no authority, as required by Rule 23(a)(4), M.R.App.P., for the proposition that a court must equitably divide each marital asset after “subtracting” related marital debts, rather than equitably distributing the entire marital estate. We conclude the District Court did not err in determining the real property where the business was located-and certain related debts-were marital, and did not abuse its discretion in distributing them to Rod as part of the marital estate.
¶42 We hold the District Court did not abuse its discretion in distributing the marital estate.
¶43 Affirmed.
JUSTICES LEAPHART, RICE and MORRIS concur.