DA 07-0665

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 351

IN RE THE MARRIAGE OF
SHARON K. HOWARD,

      Petitioner and Appellee,

  and

LESTER T. HOWARD,

      Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADR-2006-191
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Dennis G. Loveless, Attorney at Law, Helena, Montana

      For Appellee:

          David B. Gallik, Attorney at Law, Helena, Montana

Submitted on Briefs:  August 19, 2008

Decided:  October 21, 2008

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Lester Howard (Lester) appeals from a final decree entered in the First Judicial District Court, Lewis and Clark County, dissolving his marriage to appellee Sharon Howard (Sharon), and distributing the marital estate. We affirm.

¶2 Lester presents the following issues for review:

¶3 Whether the District Court abused its discretion in including portions of Lester's inheritance in the marital estate.

¶4 Whether the District Court abused its discretion in excluding Sharon's condominium from the marital estate.

¶5 Whether the District Court abused its discretion in excluding Sharon's business as an asset of the marriage.

¶6 Whether the District Court abused its discretion when it denied Lester's motion for further testimony on new evidence and rebuttal testimony.

## PROCEDURAL AND FACTUAL BACKGROUND

¶7 Lester and Sharon married in December 1972. The parties separated on and off between December 2005 and December 2006. Sharon filed a petition for dissolution of marriage on June 20, 2006. The parties have four children, three of whom have reached the age of majority. The parties generally kept separate finances during the marriage, and shared the bills and division of labor in the management of their marriage.

¶8 Lester lives in Great Falls and works as a self-employed builder after having retired from the Pepsi Company. Lester holds four retirement accounts containing marital funds and a life insurance policy, with a total value of $297,417.95, as of June 1, 2006. Lester received

2

two inheritances from his parents during the marriage. He received a cabin in Neihart, Montana. The District Court valued the cabin at $110,000, with furnishings worth about $8,000. The title lists Lester and Sharon as joint owners of the cabin. Lester also received cash from his mother's probated estate in the amount of $104,000, plus $12,163 for his fees as personal representative. Lester contributed approximately $50,000 to the marital estate. The remainder of his inheritance was gradually subsumed into the marital estate. The District Court determined that the parties had provided insufficient documentation to segregate most of Lester's inheritance moneys from the marital estate.

¶9 Sharon lives in Great Falls and operates a health consulting business with her sister. Sharon has retirement and investment accounts, and a life insurance policy, with a total value of $94,508.82, as of June 1, 2006. Sharon contributed to the furnishings of the Neihart cabin and paid the utility bills and other expenses. Sharon purchased a condominium in January 2006. Sharon lived in the condominium property whenever the parties separated, and she continues to live there. Lester contends that Sharon purchased the condominium with an improvement loan on their family home, known as the Huckleberry property. The District Court determined that Lester had failed to provide proof that such loan moneys were used for Sharon's condominium.

¶10 The couple acquired numerous assets during the marriage, including, but not limited to, vehicles, a trailer, and real property. The parties purchased these items either with inheritance funds, marital funds, or non-marital funds. The couple purchased the Huckleberry property by using $37,988 of Lester's inheritance for the down payment. The

parties paid the remainder of the costs pertaining to the Huckleberry property from marital funds. Sharon paid a majority of the bills, while Lester did much of the improvement work. The District Court determined that the couple had contributed equally to the value of the house, with the exception of the $37,988 down payment that Lester contributed from his inheritance.

¶11 The parties sold the Huckleberry property during their separation. Lester and Sharon each received personal items from the Huckleberry property. The net proceeds of $203,053.89 remain in an account at Mountain West Bank. The parties' daughter, Keily, owed them for a school loan in the amount of $17,462.81 at the time of dissolution. Each party had furniture and collectibles that they had inherited. Each party owed debts in their own names.

¶12 The District Court determined the distribution of vehicles, the trailer, the real property, and monetary assets. The court's Findings of Fact, Conclusions of Law, and Final Decree of Dissolution, awarded Lester a total of $422,436. This total included the following items: 80% of the Neihart cabin and furnishings; half of his retirement accounts; his insurance policy; half the proceeds of the Huckleberry property, plus his inheritance contribution. The court also awarded Lester all vehicles, except the Honda car, and the trailer.

¶13 Similarly, the court awarded Sharon a total of $316,955. This total included the following items: 20% of the Neihart cabin and furnishings; her retirement plan; her life insurance policy; her investment accounts; half the proceeds of the Huckleberry property,

4

less Lester's inheritance contribution; and one half of Lester's retirement accounts. The court also awarded Sharon the Honda and full title to the condominium that she had purchased with her separate funds.

¶14 The District Court ordered Lester to pay Sharon $25,000 to equalize the distribution of the marital estate. The court directed that the $25,000 should be deducted from Lester's share of the Huckleberry property proceeds. The court ordered the parties to divide the payments received on the school loan from their daughter. Each party is entitled to their own inherited furniture and collectibles. All other debts in their own name remained theirs. Lester claimed that he had paid Sharon's taxes in 2003 and 2005 from his inheritance money. Lester failed to persuade the court that this money came exclusively from his inheritance, and the court deemed the payments to have been made with marital assets. The court equally divided all other inheritance funds, excluding their daughters' college funds.

¶15 Lester earlier filed a motion on September 6, 2007, to reopen the hearing to enable him to conduct redirect examination of his witnesses and to present rebuttal testimony. Lester provided no specifics as to what evidence or testimony that he would introduce that the court had not already received and heard. The court advised the parties that it had received ample evidence to decide the case. The court issued its final decree on September 27, 2007, and denied Lester's motion.

¶16 Sharon filed a motion on October 9, 2007, for an order distributing the proceeds from the sale of the Huckleberry property. Lester filed a motion to reconsider and clarify. The court declined to modify the distribution of the marital estate, but clarified its final decree.

The court clarified that it had awarded Sharon the 1997 Honda car, rather than the Honda four wheeler. The court further clarified that Lester's $50,000 contribution to the marital estate from his inheritance resulted in his share of the estate being $50,000 more than Sharon's. The court further advised the parties to meet and divide the Huckleberry property proceeds. The court denied Lester's motion to reconsider reopening testimony. Lester appeals.

**STANDARD OF REVIEW**

¶17 We review a district court's distribution of property in a marriage dissolution case to determine whether the findings of fact are clearly erroneous; if the findings are not clearly erroneous, we affirm unless the district court abused its discretion. *In re Marriage of Markegard*, 2006 MT 111, ¶ 11, 332 Mont. 187, ¶ 11, 136 P.3d 532, ¶ 11 (citations omitted).

**DISCUSSION**

¶18 *Whether the District Court abused its discretion in including portions of Lester's inheritance in the marital estate.*

¶19 Lester argues that the court should not have included his inheritance in the marital estate. Lester relies on *In re Marriage of Herron*, 186 Mont. 396, 405, 608 P.2d 97, 102 (1980), to support his claim that the parties should not share equally in property that is acquired by gifts or bequests. He argues that he is entitled to sole ownership of the Neihart cabin and a larger share of the proceeds from the Huckleberry property to reflect contributions from his inheritance.

6

¶20 Section 40-4-202(1), MCA, allows the court to consider the contribution of a spouse in dividing property acquired by gift, bequest, devise, or descent. Spousal contribution includes the extent to which such contributions have facilitated the maintenance of the property. Section 40-4-202(1)(b), MCA. The Neihart cabin was titled in both parties' names. Sharon paid the utility bills and contributed to the furnishings, general maintenance, and paid other expenses. Lester testified that he and Sharon had an arrangement that she would pay the utility bills and he would pay the taxes on the cabin. The District Court properly awarded Sharon 20% of the value of the cabin to reflect her contributions that facilitated the cabin's maintenance.

¶21 The parties purchased the Huckleberry property by using $37,988 of Lester's inheritance as a down payment. The court properly excluded this payment amount from the marital estate. Lester claims nevertheless that he should receive an additional non-marital contribution of $18,124 for the new well, septic system, and drain field. Lester testified that he transferred inheritance funds from an investment account to a joint checking account. Lester further testified that he made payments from the joint checking account to cover the $18,124. Sharon contended that the parties paid for these improvements from marital assets. The court found that Lester did not have any additional inheritance interest in this property beyond the $37,988 down payment.

¶22 The parties contributed to the value of the Huckleberry property. Sharon paid a majority of the bills, while Lester did much of the improvement work. The District Court determined that the parties had contributed equally based on conflicting testimony of Lester

7

and Sharon and the other evidence presented. The district court must determine the credibility of each witness based upon his or her demeanor, temperament, attitude, and candor, among other things. We defer to the district court's discretion in matters of evidence weight and credibility, particularly when conflicting evidence is presented. *In re Marriage of Grende*, 2004 MT 36, ¶ 27, 320 Mont. 38, ¶ 27, 85 P.3d 788, ¶ 27. We reject Lester's claim that the District Court abused its discretion in distributing the marital estate by including portions of his inheritance.

¶23 *Whether the District Court abused its discretion in excluding Sharon's condominium from the marital estate.*

¶24 Lester argues that the District Court abused its discretion in failing to include Sharon's condominium as marital property. Lester relies solely on his claim that Sharon allegedly told him that she was using some of the money from the refinance of the Huckleberry property for the down payment and the remodel of her condominium. Sharon provided the court with records pertaining to the expenditures of the refinancing. Sharon's receipts and records satisfied the court that she had expended no marital assets on the condominium. Lester offered only his own unsubstantiated testimony that Sharon had used marital funds for the condominium. We defer to the district court's discretion in matters of evidence weight and credibility, particularly when the parties present conflicting evidence. *Grende*, ¶ 27. The District Court did not abuse its discretion in excluding Sharon's condominium from the marital estate.

¶25    *Whether the District Court abused its discretion in excluding Sharon's business as an asset of the marriage.*

¶26    Sharon and her sister own a health consulting firm. The business bank account had a value of $32,000 at the time that Sharon filed her petition for dissolution. Lester argues "I helped support that [Sharon's business] through the family vehicle of doing repairs on it. There was high mileage put on it." Sharon's interest in the business checking account is $16,000. Lester contends that he is entitled to $8,000 as his marital interest. Sharon counters that Lester failed to include her business as a marital asset in his declaration of disclosure.

¶27    Lester included average monthly profits of $500 from his self-employed business. The court did not award Sharon half of Lester's annual profits. The court awarded the parties all property in their possession or in whose name it was titled. The business checking account was titled in the names of Sharon and her sister. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *In re Marriage of Crilly*, 2005 MT 311, ¶ 10, 329 Mont. 479, ¶ 10, 124 P.3d 1151, ¶ 10. We conclude the District Court did not abuse its discretion in awarding the parties the businesses that each operated.

¶28    *Whether the District Court abused its discretion when it denied Lester's motion for further testimony on new evidence and rebuttal testimony.*

¶29    Lester argues that the District Court asked the parties to submit additional evidence at the close of the hearing. Lester argues, however, that the District Court failed to approve his

motion to reopen the hearing to offer additional testimony regarding Lester's inheritance, the date of the parties' separation, control of property, and to allow his rebuttal witnesses to testify. Lester further contends that the court abused its discretion in not allowing him to conduct redirect examination of Lester.

¶30 The court asked the parties to present values of their retirement accounts and insurance policies as of the date of separation. Lester had argued that the date of separation should have been December 2006. Sharon had argued for December 2005. The court took the middle ground and determined June 1, 2006, to be the date of separation. The parties provided updated information regarding the value of their retirement accounts and insurance policies as of June 1, 2006. The court divided the property according to the values as of June 1, 2006.

¶31 Sharon asked the court to exclude any witnesses before the start of the testimony. The court asked Lester's counsel whether any persons present in the courtroom were going to testify. Lester's counsel informed the court that "it is not our plan at this point . . . unless they are called as rebuttal witnesses." Lester ultimately chose not to call rebuttal witnesses during the trial. Further, Lester's counsel did not inform the court that he wanted to conduct redirect examination of Lester. It was only after the trial, over three weeks later, that Lester sought to reopen the hearing to conduct redirect examination of Lester and to provide rebuttal testimony.

¶32 Rebuttal witnesses may offer testimony only about "that which tends to counteract *new matter* offered by the adverse party." *Massman v. City of Helena*, 237 Mont. 234, 243,

10

773 P.2d 1206, 1211 (1989) (citations omitted). A determination of whether proposed testimony is admissible as rebuttal testimony in any given case lies within the sound discretion of a district court, and we will not reverse a district court's ruling unless it abused its discretion. *Massman,* 237 Mont. at 243, 773 P.2d at 1211. The proposed redirect examination of Lester and rebuttal testimony regarding Lester's inheritance, the date of the parties' separation, and control of property do not constitute new matters raised by the defense. *Massman,* 237 Mont. at 243, 773 P.2d at 1211. The District Court did not abuse its discretion when it denied Lester's motion to conduct redirect examination of Lester and to present rebuttal testimony.

¶33    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
Justice Jim Rice, dissenting.

¶34    I respectfully dissent from the Court's decision and would reverse on Issues One and Three.

¶35    Under Issue Three, I disagree that the District Court did not abuse its discretion when it omitted Appellee's business bank account from its findings of marital assets. This Court has previously held that, as a general rule, if the parties present evidence regarding the existence of a marital asset and the district court fails to make findings regarding the asset, the district court has abused its discretion. *In re Marriage of Larson*, 200 Mont. 134, 139,

11

649 P.2d 1351, 1354 (1982). In *Larson*, the district court failed to include a checking account balance, certain shares of stock, and a wheat crop in its findings. *Larson*, 200 Mont. at 138-39, 649 P.2d at 1353-54. Respondent argued the court properly excluded these items from its findings because the values of the items either fluctuated widely or were essentially worthless. *Larson*, 200 Mont. at 139, 649 P.2d at 1354. The Court held that, regardless of any dispute in valuation, the court must disclose its reasoning for not including certain items so that this Court does not have to succumb to speculation. *Larson*, 200 Mont. at 139, 649 P.2d at 1354.

¶36 Similarly, we have held that a district court's failure to include a $1,900 check in its findings prevented us from determining whether the court equitably distributed the property. *In re Marriage of Scott*, 246 Mont. 10, 20-21, 803 P.2d 620, 626 (1990). In *Scott*, the record reflected testimony regarding the check, but the court's findings did not explain why it was not ultimately included in the parties' liabilities. *Scott*, 246 Mont. at 20-21, 803 P.2d at 626.

¶37 Here, the District Court specified that the marital estate would be valued as of the date the petition was filed. Appellee listed a business account containing $32,000 on her Declaration of Disclosure, and later testified that this balance existed as of the date she filed her petition. Yet, the court makes no mention of this account in its findings. In its order, the court distributed the estate and then required Appellant to provide Appellee with an additional $25,000 in order to "equalize the distribution." However, this equalization was

12

ordered without consideration of the $32,000 business balance that would have been credited to Appellee.

¶38 The District Court's failure to enter a finding regarding Appellee's business and account for the asset is contrary to our case law. This Court can only speculate as to why the District Court did not make note of this account. Thus, this Court, without any analysis, sets forth the parties' arguments, a few related facts, and then makes a blanket statement that the court did not abuse its discretion. However, as we have stated, "[t]his Court cannot uphold the District Court's judgment as within the realm of its broad discretion if we have no inkling of its thought processes." *Larson*, 200 Mont. at 139, 649 P.2d at 1354. Therefore, I would reverse on Issue Three and remand for the District Court to make sufficient findings as to the inclusion or exclusion of Appellee's business assets.

¶39 Under Issue One, I would hold that the District Court failed to properly apply the requirements of § 40-4-202(1), MCA. The distribution of a marital estate is controlled by § 40-4-202(1), MCA, which provides:

> In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:
> (a)  the nonmonetary contribution of a homemaker;
> (b)  the extent to which such contributions have facilitated the maintenance of this property; and
> (c)  whether or not the property division serves as an alternative to maintenance arrangements.

We have frequently held that the proper application of this section is to award the non-

13

acquiring spouse "an equitable share of only the appreciated or preserved value of the inherited property which is attributable to his or her efforts." *Stoneman v. Drollinger*, 2000 MT 274, ¶ 18, 302 Mont. 107, ¶ 18, 14 P.3d 12, ¶ 18; *see also In re Marriage of Herron*, 186 Mont. 396, 608 P.2d 97 (1980); *In re Marriage of Harper*, 1999 MT 321, 297 Mont. 290, 994 P.2d 1. In *Herron*, we clarified that if the non-acquiring spouse contributed to the maintenance of gifted property, he or she should then share in the appreciated value of the gift property, not the total value of the property. *Herron*, 186 Mont. at 405, 608 P.2d at 102; followed by *In re Marriage of Engen*, 1998 MT 153, ¶ 29, 289 Mont. 299, ¶ 29, 961 P.2d 738, ¶ 29 ("the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts").

¶40 It is not apparent from the District Court's findings how the payment of electric bills by Appellee translates into a twenty percent distribution of both the original value of the inherited property and its subsequent appreciation. The District Court awarded Appellee twenty percent of the cabin's $110,000 value, or $22,000. The court did not explain why it apportioned a percentage from the current value of the inheritance rather than the amount it appreciated, nor did it explain how it arrived at the twenty percent figure. The findings do not mention the cabin's original inheritance amount of $32,500 or reflect any effort to assess the portion of the cabin's appreciation which is attributable to Appellee's efforts. In support of its finding, the District Court simply notes that the cabin is titled in both parties names and Appellee paid a portion of the utilities and "some other expenses." However, as we have previously held, the manner in which property is titled does not determine how gifted

14

property should be distributed. *Engen*, 1998 MT 153, 289 Mont. 299, 961 P.2d 738. While we do not require a finding to be made on each and every matter, there must be sufficient findings for the statutory formula to be applied.

¶41    Though I acknowledge a district court must be granted wide latitude in dividing marital assets, I do not agree that a district court can do so by deciding issues without necessary findings and a basic application of governing legal principles. I do not believe that was done here with regard to Issues One and Three.


/S/ JIM RICE